# WHITMAN GOLD AND SILVER MINING COMPANY, RESPONDENT, v. F. A. TRITLE et als., APPELLANTS.

DEMAND, ITS PURPOSE IN TROVER AND REPLEVIN. The only purpose of proving a demand in the actions of trover and replevin, is to show the defendant's possession wrongful.

WHEN DEMAND FOR PERSONAL PROPERTY UNNECESSARY. Where the owner of personal property does not part with it voluntarily, but it is tortiously taken from his possession, or any act is done which makes the possession of the person having it wrongful, no demand is necessary to be shown to entitle the owner to a recovery of it.

PERKINS v. BARNES, 3 NEV. 557, APPROVED, to the effect that a plaintiff in an action for the recovery of personal property makes out his case when he shows his right of possession and an unlawful detention; and that a demand need never be proved in such cases except to show the detention to be wrongful, and that when such fact can be proved in any other way, no demand need be shown.

DEMAND IN ACTION TO RECOVER VALUE OF PERSONAL PROPERTY. If no demand be necessary in an action to recover certain specific personal property, no demand is necessary in an action brought to recover its value only.

ACTION FOR VALUE OF WOOD CUT AND SOLD BY TRESPASSERS. Where trespassers cut wood on lands belonging to plaintiff, and sold it to defendants, who were bona fide purchasers: Held, that no previous demand was requisite to sustain an action for the recovery of the wood or its value.

APPEAL from the District Court of the First Judicial District, Storey County.

This was an action against F. A. Tritle, John Mackey, and William Sharon, to recover six thousand dollars, the value of two hundred and fifty cords of nut-pine wood. The cause was tried before a jury, who found a verdict in favor of plaintiff to an amount of ninety-three cords of wood, worth fifteen hundred and eighty-one dollars; and judgment was entered accordingly.

*Aldrich and De Long*, for Appellants.

## I.

The action could not be maintained against appellants, who were innocent and bona fide purchasers of the wood, unless a distinct and positive demand for the delivery of the particular wood claimed was made upon them, and they refused absolutely to deliver, before

Whitman Gold and Silver Mining Company *v.* Tritle.

action brought.   No such demand and refusal were proven.   This rule is recognized as the law in the leading text-books, and is fully supported by the decisions.   (Greenleaf's Evidence, 694, 695, 696, Sec. 642 *et seq.*)

## II.

As, to maintain the action, the refusal of defendant should be absolute, so, as a preliminary, the demand should be distinct, clear, and positive.

It might be said that a previous refusal would dispense with the necessity of a demand, as the law would not require the useless formula of a demand after such an announcement by defendant. But this, we apprehend, would not be sufficient.   The law requires that positive and unequivocal demand should be made—such an one as will advise the defendant of the nature of the claim made, and what the plaintiff wants him to do—and the law gives him the right to this demand and an opportunity for compliance with such demand.  ·

## III.

The plaintiff should be held to strict proof in this case, and should not be allowed by any equivocal or uncertain conduct to lead the defendants into such a position that a conversion might be inferred where none was intended.

We submit that informing a person that you intend to bring a suit for property in his possession, of which he has acquired possession in good faith and innocently, not designating or pointing out the property so that he may know the nature and extent of the demand, and in the same breath saying that you suppose he would stand a suit about it, is not a demand from which a conversion can be legally inferred, notwithstanding the person addressed gives an affirmative answer.

*A. C. Ellis,* for Respondent.

The plaintiff having shown its corporate existence was driven to prove its ownership by actual occupancy of *land* from which the property was taken, and then to trace the wood from various places to which it had been taken, by the trespassers upon the land, into the possession of the firm of Carpenter & Hammer, and through

them into the possession of the defendants. This character of proof was certainly competent to establish this portion of the complaint, to wit, plaintiff's ownership, and the identity of the wood, and the jury found the proof sufficient.

## I.

No demand was necessary to be proved, nor was it necessary to plead a demand. Under our statute we might have commenced an action for the *delivery* of this property specifically, and in case the same could not be delivered, then obtained a judgment for its *value*, which in effect is precisly the same relief sought in this action, which is in the nature of trover and conversion. The rule as to the necessity of demand is the same in one case as in the other.

The rule in relation to demand is in this case precisely the same as in the case of *Perkins* v. *Barnes*, (3 Nev. 557) for it is amply sustained by the proof that the defendants had the property in their possession, and more, that it was actually consumed by them in the furnaces of the " Petaluma Mill." If plaintiff shows *ownership* and *right of possession*, and *unauthorized* detention of defendants, why is demand any more necessary in the action of trover and conversion than in the case of our personal property action, which was the case of *Perkins* v. *Barnes ?*

## II.

If a demand were necessary before suit brought, a sufficient and proper demand was made. The question of demand was fully submitted to the jury; the jury passed upon it, both as to its sufficiency, as indicating the intention of plaintiff, and as to the identity of the property demanded. There is no form of language prescribed or set down in the law in which a demand must be couched. The use of any language by the person making demand, which sufficiently indicates his desire to have the property in question restored to him, will fulfill the object of the law.

## III.

A demand was unnecessary, for the reason that defendants had wrongfully assumed the property in the wood, in declaring when called on by plaintiff's attorney and agent that they had paid for

all the wood in the yard, and did not intend to pay for it again, and that they should certainly use it, and that they would stand a suit before they would give it up, and this some two months before suit was brought.    (Chitty on Pleading, 155, and cases cited.)

By the Court, LEWIS, C. J.

This action is brought to recover the sum of six thousand dollars, the value of a large amount of fire-wood belonging to the plaintiff, which it is alleged was wrongfully converted by the defendants. Issue having been taken on all the material allegations of the complaint a trial was had, which resulted in a verdict in favor of the plaintiff for the sum of fifteen hundred and eighty-one dollars. From the judgment, and the order refusing a new trial, the defendants appeal.    It appears from the record that the defendants were *bona fide* purchasers of the wood, having no notice at the time of the purchase that their vendors had cut it on the plaintiff's premises, or that they were not the rightful owners.    It is therefore urged that this is a case in which it is necessary for the plaintiff to prove a demand for the wood, and a refusal of the defendants to return it, before a recovery can be had.    Assuming that no sufficient demand was shown by the plaintiff, counsel for defendants contend that the verdict is for that reason erroneous, and should be set aside.

As there is nothing in the statute of this State making a demand necessary, either in an action to recover specific personal property, or an action of this kind, where the value only is sought to be recovered, we must look to the decisions of the Courts in actions of a similar character at common law for a solution of the question, as to whether a demand is necessary or not; and if it be found that it is not necessary under the old practice, there can be no reason or authority for requiring it in this action, under our form of procedure.

The opinion that a demand is an essential prerequisite in all actions to recover personal property or its value, under the modern practice, doubtless has its foundation in the mistaken belief that it was essential to the maintenance of the old action of trover or replevin.    But a demand in neither of those actions was ever

necessary, except for the purpose of showing a conversion or an unlawful holding of the property. A demand in cases of this kind has never, we apprehend, served any purpose beyond that. The old action of trover was founded on a fiction. It was assumed, for example, by A, the plaintiff, that he had lost certain property, and that B had *found* and converted it to his own use. Such being the case, B's possession was of course lawful, until it was shown in some way that he converted it to his own use, for it was not considered unlawful to take into possession property which had been found. Hence the plaintiff generally could only show that B's possession was wrongful by proving a demand upon him for the property, and a refusal to return it. But in that action even a demand was never necessary, if it could be shown in any other way that he had converted the property. (1 Chitty on Pleading, 157.) So in trover it will be seen a demand served no purpose beyond that of establishing a conversion, and was utterly unnecessary if that fact could be proven by any other means.

By analogy to this practice it has been held in actions of replevin where the plaintiff has voluntarily parted with his property and the defendant has acquired rightful possession of it, that it is necessary to make a demand upon the defendant before an action can be maintained against him. But as in trover so in replevin, a demand can answer no purpose save that of showing the defendant's possession to be wrongful. When, therefore, the owner does not voluntarily part with his property but it is tortiously taken from him, or any other act is done which makes the possession of the defendant wrongful, no demand need be shown, for every detention of property against his will who is entitled to its possession is unlawful.

We are satisfied that the authorities fully sustain this proposition. Such was the view taken by this Court in the case of *Perkins* v. *Barnes*, (3 Nev. 557) in which it was said that in actions for the recovery of personal property the plaintiff makes out his case when he shows the title or right of possession in himself and an unlawful detention by the defendant; that a demand is never necessary in such cases except for the purpose of showing the detention to be wrongful; and that when that fact can be proven in any other way no demand need be shown.

The opinion in that case is relied on by counsel for respondent as authority in his favor here, and he argues very properly that if no demand be necessary to enable the plaintiff to recover the property itself, it is equally unnecessary where he only seeks to recover its value.   That case was decided upon a philosophical consideration of the question discussed rather than upon an examination of decided cases.   But as the same question is again brought before us in this case we have taken occasion to consult authorities, and after a thorough investigation, we conclude that the opinion expressed by us in that case is fully sustained by the great weight of decisions, and certainly seems to be grounded upon correct principles.

In New York it is true a different rule has been adopted by the Courts, and upon the authority of the decisions of that State the same rule has been followed in Indiana.

But the decisions in New York are founded upon error and a misunderstanding of the English rule, as is most clearly shown by the Supreme Court of Massachusetts in the case of *Stanley* v. *Gaylord*, (1 Cushing, 536) where this question is elaborately and learnedly reviewed, and the doctrine of the New York cases entirely repudiated : the Court holding that a *bona fide* purchase from one who had the actual possession of the property, but without any right to retain possession as against the lawful owner, and an actual taking of it under such purchase into the custody of the purchaser would subject him to an action of trespass or trover at the suit of the lawful owner without any previous demand.   And in the case of *Riley et al.* v. *The Boston Water Power Company*, (11 Cushing, 11) this rule is reaffirmed by the same Court.   Such is also the view taken of the question by the Supreme Court of Maine.   In *Galvin* v. *Smith*, (2 Fairfield, 28) it appears that the plaintiff, being the owner of a horse, bailed him to A to be used for a limited time under the expectation of a purchase by the latter.   During this time A, for a valuable consideration and without notice, sold the horse to B, and he in like manner to the defendant Smith, and it was held that no previous demand was necessary to enable the owner to maintain replevin against the last purchaser.   The reasoning by which this conclusion was arrived at by the Court is thus stated in the opinion :   "It is assumed in argument on the part of the coun-

sel for the defendant that his possession was lawful and that a demand was necessary by the plaintiff to enable him to maintain replevin, and if his premises are correct he is sustained in this position by some of the other cases cited. The possession of the defendant did not subject him to the imputation of anything morally wrong. He acted in good faith, having purchased of one whom he supposed to have been the rightful owner, as did two others who successively purchased and sold the horse in question. But their supposition did not accord with the fact. The horse was from the beginning the property of the plaintiff, and he had never authorized either of these sales. Whoever takes the property of another without his assent express or implied, or without the assent of some one authorized to act in his behalf, takes it in the eye of the law tortiously. His possession is not lawful against the true owner. That is unlawful which is not justified or warranted by law, and of this character may be some acts which are not attended with any moral turpitude. A party honestly and fairly and for a valuable consideration buys goods of one who had stolen them. He acquires no right under his purchase. The guilty party had no rightful possession against the true owner and he could convey none to another. The purchaser is not charged criminally, because innocent of any intentional wrong ; but the owner may avail himself against him of all civil remedies provided by law for the protection of property. If the bailee of the property for a special purpose sells it without right, the purchaser does not thereby acquire a lawful title or possession." This language is adopted by the Supreme Court of Massachusetts in *Stanley* v. *Gaylord,* as correctly stating the law.

Such is also the rule adopted in New Hampshire. *Hyde* v. *Noble,* (13 N. H. 494) where it was held that the purchase of property from one who had no power to sell, when the purchaser took a delivery of it and retained possession, claiming it under the sale, was in itself a conversion by the purchaser, sufficient to enable the owner to maintain trover against him, without a previous demand. (See also 10 N. H.) So too in Michigan it is held that no demand is necessary. See *Trudo* v. *Anderson,* (10 Mich. 357) where the Supreme Court discusses this question in this manner: " But the counsel for the defendant in error insists this principle

does not apply to a purchaser in good faith and without notice ; that to render the defendant liable to a suit for the property, a previous demand should have been made.    This exception to the principle just stated seems now to be established in the State of New York, as the cases cited by defendant's counsel sufficiently show, and the authority of these cases has been recently followed in Indiana.  ·So far as the New York rule does not depend upon the distinction between replevin in the *cepit* and *detinet* it seems to rest upon the principle that ' a man who innocently purchases property, supposing he should acquire a good title, ought not to be subjected to an action until he has an opportunity to restore the goods to the true owner.'    The apparent equity of this rule would on first view seem to recommend it.    But upon a careful examination its justice as a rule of law will be found to be more apparent than real, as it must depend upon the peculiar circumstances of each particular case, and its injustice would be manifest if applied to a case where a previous demand would impose a serious inconvenience upon the plaintiff.    It is not easy to give a satisfactory reason why the true owner, who has been guilty of no wrong or negligence, should be prejudiced by a transaction between the wrongful taker of his property and a third person, or how such a·transaction can impose upon him a new obligation.    In many cases a previous demand would impose upon the owner a serious inconvenience, and in some cases might be equivalent to a denial of his right.    *    *    *    *    Why should the right of the plaintiff to recover property be made to depend upon the good faith of the defendant, when that good faith is no defense against the plaintiff's right of property or possession where a previous demand has been made.    The principle upon which the New York rule rests might properly have some weight with the Court upon a question of costs where they are discretionary, or might justify the Legislature in refusing costs to the plaintiff, where a previous demand could have been made without serious risk or inconvenience, and the suit has been brought without such demand.    But we think the principle of the rule cannot properly be extended to the right of action.    We do not think the question of interest or good faith in a party receiving possession from a wrongful taker in such cases, and

where the owner has been guilty of no wrong or negligence, can have any bearing upon the right of recovery in a civil suit for the property or its value, and such is clearly the weight of authority both in England and the United States."

We have thus quoted at length from the opinion of the Supreme Court of Michigan, because it fully and exactly expresses our own views on this question. And although the action in which it was delivered was replevin, still the views expressed will apply with equal force to a case of this kind, where it is sought not to recover the property, but its value; for if no demand be necessary when it is sought to recover the property itself, it certainly cannot be when the action is brought to recover its value only. (See also *Oleson* v. *Merrill*, 20 Wis. 462.) This is also the law of the English Courts. (*Soames* v. *Watts*, 1 Carrington & Payne, 400; *Yates, assignee of Marshall*, v. *Carnsew*, 3 C. & P. 100.) where Lord Tenterdon remarked, that the buying of goods from one not authorized to sell was itself a conversion, the distinguished Chief Justice evidently meaning the buying *and taking possession under the purchase*, for the purchase alone without taking possession would not perhaps amount to conversion.

The defendants in this case purchased from persons who were trespassers, having no title or right of possession to the property sold by them. Such being the case, a demand which serves no purpose except to establish a conversion was unnecessary, because, to employ the language of Lord Ellenborough in *Hurst* v. *Gwennop*, (2 Starkie R. 306) " the very act of taking the goods from one who had no right to dispose of them was of itself a conversion."

Upon principle and authority, therefore, we conclude that the judgment must be affirmed.

By JOHNSON, J., specially concurring.

This action is in the nature of trover at common law. As understood in modern practice, the gist of this action is the conversion of a chattel, the property of the plaintiff, of which he had or at least was entitled to the possession, at the time it came to the hands of the defendant. (9 Bac. Abr. 629.) The action being founded upon a conjoint right of property and possession, any act

of a defendant which negatives or is inconsistent with such right amounts in law to a conversion. The question is, does he exercise a dominion over it in exclusion, or in defiance, of plaintiff's right? If he does, that is in law a conversion, be it for his own or another person's use. (Ib. 630; 5 Cowen, 325.)

If a party have illegally taken away or wrongfully assumed the right to goods in the manner which in the very taking or mode' of performance constituted a *conversion*, then no further step is in general necessary, because the right to sustain an action of trover is in that case already complete. But in a case where the original taker was lawful, and the detention only illegal, it is absolutely necessary, and it is in most cases advisable, in order to *secure* sufficient evidence of a tortious conversion on the trial, to give a formal notice of the owner's right to the property and possession, and make a formal *demand in writing* of the delivery of such possession to the owner. (1 Chit. Pr. 565–6.)   Later authority holds that the demand need not be in writing. But where there has been an actual conversion it is not necessary to prove a demand and refusal, (which is merely an evidence of a conversion) as if, for instance, a person purchase another's goods from one having no right to sell them and takes them into his possession, it is assuming upon himself the property and right of disposing of another's goods, and amounts to a conversion. (1 Dever. N. C. R. 308.)

This statement of the law will not be questioned. How, then, stands this case upon the facts about which there is no dispute? Tritle, for himself and his codefendants, composing "The Petaluma Mill Company," had in good faith bought the wood from parties who, it is shown, had no authority to cut or carry it away from the possession of the plaintiff. Ellis, the attorney of plaintiff, called upon Tritle, stated his authority, and the claim which plaintiff made to this wood. In the conversation that followed, Tritle stated in substance that "he had bought and paid for it, and did not intend to pay for it again, and would use it." These declarations of his most certainly brings it within the rule stated, which amounts to an actual conversion, and no formal demand for the delivery of the wood was necessary. Therefore, I do not

consider it necessary to go into the further inquiry as to the question of demand, certainly not for the purpose of either attacking or defending views heretofore expressed by the Court in reference to another and entirely distinct character of action—as to demand under our statutory proceeding of claim and delivery of personal property—when it must be seen that the character of the actions are so essentially different. If the questions made and determined in the case of *Perkins* v. *Barnes*, referred to, are not already the settled law of this Court, I prefer that it shall be done at some future time when the question properly arises.

I see no sufficient ground of error in respect to other points made by appellants, and hence must concur in the judgment of affirmance.