[Decided at PENDLETON, July 31, 1897.]

## PERKINS *v.* McCULLOUGH.

(49 Pac. 861.)

1. EVIDENCE OF SALE.—An alleged division of property held in the name of a husband, made between him and his wife, because she had helped earn it and acquired an interest therein, testified to by the wife, when there is neither written evidence of such transfer nor change of possession, is not sufficient proof of a sale to her, when her testimony is contradicted by the husband.

2. EQUITY — FRAUDULENT TRANSFER.—Where an owner of property made a lease thereof in the name of his wife to defraud creditors, she did not thereby acquire title; and hence the rule that equity will not lend its aid to a seller of personal property transferred in fraud of creditors, when he seeks to recover it, does not apply in a suit wherein the husband asserts his title.

3. BONA FIDE PURCHASER.—A father who accepts from his daughter, with notice, a bill of sale covering property that belonged to her husband, and which had been leased to a third party in her name for the purpose of defrauding the husband's creditors, is not a bona fide purchaser when the only consideration was board for herself and child and money already advanced for incidental expenses.

From Umatilla: STEPHEN A. LOWELL, Judge.

Suit by R. S. Perkins against B. F. McCullough, W. H. Babb, and others for recision of a contract and for an accounting.

The cause of suit stated herein is, briefly and in substance, as follows: On May 1, 1893, McCullough, one of the defendants, and Mrs. Hannah N. Babb were joint owners of some three hundred head of cattle and two hundred head of horses, then upon the range in the Big Bend Country, in the State of Washington, and upon the date named they entered into an agreement, by the terms of which Mrs. Babb let and leased to McCullough all said cattle and horses for a term of five years, and, among other things, agreed that each

should be entitled to one-half the proceeds of sales thereof made during the term of the lease. McCullough received and took possession of the cattle and horses in accord with the agreement, and sold and disposed of many of them, but has refused, and still refuses, to account to Mrs. Babb or her successor in interest for any of the property so sold and disposed of, and is now threatening to dispose of the entire property and appropriate the proceeds to his own use. On January 31, 1895, the plaintiff purchased of Mrs. Babb all her interest in the stock, and all claims and demands against the said McCullough arising out of said agreement, but plaintiff is unable to obtain a settlement with McCullough, who refuses to recognize his ownership or right to demand a settlement. About two hundred head of the cattle have been brought into Umatilla County, Oregon. W. H. Babb and W. F. Matlock are made parties, and, it is alleged, are conspiring with McCullough to deprive plaintiff of his rights in and to the property. Zoeth Houser, who is sheriff of Umatilla County, is also made a party. The prayer is that the agreement of leasing be rescinded, and for an accounting and a division of the property and proceeds arising from any sales thereof theretofore made. Babb and McCullough claim to be the owners of the cattle, Matlock claims the right to subject them to sale under an execution against the property of Babb, and Houser justifies under the writ. The court below dismissed the complaint, and the plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *John C. Leasure* and *Stillman & Pierce,* with an oral argument by *Mr. Leasure.*

For respondents there was a brief and an oral argument by *Messrs. James H. Raley* and *John J. Balleray.*

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

1.   The following facts have been proven: On December 16, 1893, W. H. Babb and McCullough were, and had been since prior to May 1 of that year, joint owners of the cattle in question.   McCullough had formerly held a lease of them from Babb, which had expired on the date last named.   On the said sixteenth day of December Babb procured Hannah N. Babb, who was then his wife, to enter into a contract of leasing with McCullough, by the terms of which the said Hannah N. Babb, in purport, let and leased the cattle to McCullough for a period of five years, commencing with May 1, 1893.   The lease contained the following stipulation, among others, viz: "In fulfillment hereof, and consideration of the proper observance of the covenants and agreements herein contained, and by the said second party (McCullough) to be kept and performed, that she, the first party (Hannah N. Babb), will on the first day of May, 1898, deliver over to said second party, as his individual and exclusive property, by instrument or otherwise, as he may direct, one-half of all said original cattle   *   *   *   then surviving, and one-half of all increase,   *   *   *   retaining the other one-half as her own individual and

exclusive property." At the time this lease was exe-
cuted, W. H. Babb was heavily involved, he then
owing the defendant, Matlock, about $1,700, the Pen-
dleton Savings Bank $4,000, and divers sums to other
persons; and it was for the purpose of misleading and
deceiving these creditors, and hindering and delaying
them in the collection of their just demands, that he
procured the lease to be made in the name of his wife.
Mrs. Babb was fully cognizant of his purpose, and lent
her name to the scheme with a view of furthering the
purpose and promoting the scheme. On the thirty-
first day of January, 1895, Mrs. Babb gave the plaintiff
herein, who is her father, a bill of sale of the cattle,
which purports on its face to be in consideration of
$7,000, and on the same date, by indorsement, as-
signed, transferred, and set over to him all her right,
title, and interest in and to the lease; and on July 6,
following, he, by employment of the same language,
reassigned the lease to her. In so far as there is any
written evidence, those several instruments constitute
the sum and substance of plaintiff's title. Now it is
claimed by plaintiff that within a few days after the
last assignment there was a verbal agreement or un-
derstanding between him and his daughter to treat it
as not having been made, and that such assignment
was thereby rescinded and the plaintiff reinvested
with the lease; and, in further establishment of the
plaintiff's title, it is claimed that prior to all these
transactions, in the spring or fall of the year 1892,
Mrs. Babb and her husband had a division of their
property, and that in such division these cattle fell to
Mrs. Babb, and that Babb thereupon transferred and

delivered them to her, and that she owned them ever since, up to the time of their transfer by said bill of sale, and that the plaintiff is a bona fide purchaser from her for value.

Let us see if these claims are well founded, as measured by the proofs.   Prior to the year 1892, Babb had accumulated considerable property, consisting of a couple of tracts of land situate in Umatilla County, Oregon, of the probable value of $17,500, and a band of cattle and horses then upon the ranges in Umatilla and in Douglas County in the State of Washington, worth perhaps $7,000 or $8,000.   Mrs. Babb testifies that, as the wife of Babb, she had helped to earn this property, and thereby acquired an interest therein, although it was all in her husband's name; that in the spring or fall of the year 1892 — she could not be definite — she and her husband talked over the matter and it was understood and agreed between them that Babb should take the land and she the stock.   There was no bill of sale or other written transfer of the stock, nor was there any delivery of possession. When asked what she did to take possession, she answered, "I simply said they were mine."   Subsequently to the alleged transaction the stock were managed by Babb, the same as before; he paying the taxes upon them, disposing of portions of them from time to time, and purchasing other stock and adding to the herd, all without accounting to Mrs. Babb for a single transaction.   Mrs. Babb further testifies that the land was deeded to her by Babb at the same time that she made the lease to McCullough of the cattle. On February 22, 1895, she wrote her son Willie:   "I

have put all the cattle, horses, and land in pa's name, so, if I can't raise the money by June, they can take nothing but the land." On July 6, the same date that the plaintiff reassigned and transferred the lease to Mrs. Babb, he also redeeded to her the land; and on July 18, Mrs. Babb, in turn, deeded the land back to Babb, with a letter written by her to Babb of that date and directed to him at Chicago, and inclosed the two deeds and the lease containing the indorsement of herself and plaintiff, all which he received in due course of the mails. She and plaintiff both testified that the consideration for the sale of the stock by her to plaintiff was $7,000, but further examination disclosed the fact to be that no money was paid at the time, but that she and her child had been living with the plaintiff about a year and a half prior thereto, and that he had been furnishing her money from time to time as she needed it for clothing and incidental expenses; it being estimated that she owed him for these accommodations in the neighborhood of $1,200. This was to be turned in as part payment, and he was to continue to board and clothe her and her child, and the final payment was to be made "when the horses and cattle were rounded up and sold." Perkins says he bought the property in good faith, believing it to belong to Mrs. Babb. Touching the retransfer of the lease by plaintiff to Mrs. Babb, she testified as follows, in answer to the interrogatories propounded to her: "Q. Didn't he transfer the horses and cattle back to you at the same time he transferred the land? A. He did. Q. Signed the lease as appears therein on the back of it? A. He did. Then afterwards we talked it over,

and I said, 'Father, hold the bill of sale, and run the stock just the same as if it was sold.' Q. Why did you have Mr. Perkins make that indorsement on the lease and turn this property back to you? A. After I deeded the farm back to Mr. Babb, he thought he would deed the stuff back to me; and, after I considered the matter, I said: 'No; you keep the stuff, and run it for me, as I cannot run it myself.'" W. H. Babb flatly contradicts his wife touching a division of the property and a sale or transfer of the stock to her, — either of the title or possession; and, from the inherent weakness of her own testimony, we conclude that Mrs. Babb never at any time obtained or held the title to any of the cattle in controversy, or any interest therein.

2. The fact that she entered into a scheme with Babb to defraud his creditors, and permitted the use of her name, whereby she apparently leased the cattle, or an interest therein, to McCullough, did or could not, under any principle that we are aware of, have the effect to transfer or convey title from Babb to her. We do not understand that it was seriously contended at the argument that the leasing, in the manner in which it was intended to be accomplished, had that effect, but the main reliance was placed upon the alleged prior division of property and transfer of the stock. The proof, however, does not support the contention, as we have seen. It was sought, as against Babb, to invoke the familiar doctrine that a court of equity will not lend its aid to a vendor of personal property to recover it back when it has been transferred in fraud of creditors, but will leave the parties where it finds

them. The result of the authorities is concisely stated in Bennett's American Notes to Benjamin on Sales (6th ed.) p. 456 as follows: "The vendor cannot rescind and retake the property, nor can the vendee refuse to pay, or recover back what he has paid." This rule, as it pertains to real property, received the sanction of this court in *Bradtfeldt* v. *Cooke*, 27 Or. 194 (50 Am. St. Rep. 701, 40 Pac. 1). But the rule can have no application here; for, as between Babb and his wife, she never was the owner of the property which Perkins is now seeking to recover, and Babb's defense of his title is not an attempt to reinvest himself with a title transferred in fraud of creditors.

3. The plaintiff invokes another principle, and that is that Babb, having clothed his wife with the apparent title or power of disposition of the property, whereby other parties were induced to deal with her upon the supposition that she was the real owner, and Perkins having purchased from her, *bona fide* and for value, without notice, Babb is now precluded and estopped to dispute the title, as against him. Such is the doctrine of *Velsian* v. *Lewis*, 15 Or. 549 (3 Am. St. Rep. 184, 16 Pac. 631.) It is there said, in substance, that the rights of such a purchaser do not depend upon the actual title or authority of the person with whom he deals, but are derived from that act of the real owner which precludes or estops him from disputing, as against such purchaser, the existence of the title or power which he caused or allowed to appear vested in the party making the sale. But Mr. Perkins is not an innocent purchaser for value. In the first place, he knew perfectly where the title to the cattle

was vested, and the purpose for which they were leased to McCullough in the name of his daughter, then the wife of Babb; and, in the second place, he parted with no value at the time of the pretended purchase from his daughter; and, furthermore, his subsequent dealings with the property would not indicate that he ever seriously considered that he at any time possessed any real interest in it. All the conditions of acquiring title by estoppel, as against Babb, are entirely wanting, so that the principle invoked cannot avail the plaintiff. This consideration disposes of the case, as it leaves Perkins without any sort of title upon which to maintain his suit. The question touching the reassignment of the lease, and the subsequent consideration of the parties respecting such assignment, and other questions made in the briefs and at the argument will therefore not be passed upon. Let the decree of the court below be affirmed.

AFFIRMED.