[No. 2399]

# STUDEBAKER BROTHERS COMPANY OF UTAH (A CORPORATION), RESPONDENT, *v.* A. B. WITCHER, A. JURICH, GEORGE A. McDONALD, AND BARTLEY J. SMITHSON, APPELLANTS.

[195 Pac. 334]

1. CHATTEL MORTGAGES—CONTRACT HELD "CONDITIONAL SALE" AND NOT "CHATTEL MORTGAGE."

   A contract concerning an automobile *held* a "conditional sale" and not a "chattel mortgage," the distinguishing feature being the retention of the title to the property in the seller until the full payment of the price, which was valid under uniform sales act, sec. 20, subd. 1, although it contained provision "All other sums of money payable to you, whether evidenced by note, book account or otherwise, also any judgments which you, your successors or assigns may obtain thereafter shall have been fully paid in money, at which time ownership shall pass to me," and although seller was empowered to take possession of the property, credit buyer with the fair market value thereof, and hold him for the balance of the purchase price.

2. TROVER AND CONVERSION—DEMAND UNNECESSARY.

   When conversion is otherwise shown by the evidence, a demand is unnecessary.

3. SALES—TAKING BY VENDEE OF CAR RIGHTFULLY IN POSSESSION OF CONDITIONAL VENDOR HELD A CONVERSION.

   Where seller's right to take possession of automobile upon default of obligations imposed upon conditional vendee was absolute, the exercise thereof by the vendor made the vendor's possession lawful, and when purchaser subsequently went into the garage of the vendor and, under circumstances tending to show force, resumed possession of the property, his taking it from the lawful possession of the vendor was tortious and amounted to a conversion.

4. EXECUTION—PURCHASE ONLY SUCCEEDED TO RIGHT, TITLE, AND INTEREST OF JUDGMENT DEBTOR.

   Where judgment debtor was conditional vendee of an automobile, and had no interest beyond a right to purchase it on condition, a purchaser under execution succeeded only to his right, title, and interest, and where conditional vendor, by reason of judgment debtor's failure to keep his contractual obligations, exercised its right to take possession, the judgment debtor's interest and the title of the purchaser at the execution sale met with a common fate and were extinguished, even though the sheriff and the purchaser at the sale had no notice of the conditional contract.

5. PROPERTY—POSSESSION OF AUTOMOBILE PRESUMED TO CONTINUE IN DEFENDANT.

In a claim and delivery action commenced on September 6, where possession was shown to be in defendant on July 16, and it nowhere appears that he sold the property to any one, continuity of possession of the property by the defendant until the beginning of the action may be presumed.

6. PROPERTY—EVIDENCE HELD NOT TO OVERCOME PRESUMPTION THAT DEFENDANT REMAINED IN POSSESSION OF PROPERTY UNTIL COMMENCEMENT OF ACTION.

In claim and delivery to obtain possession of an automobile, the mere fact that third persons were in possession and seemed to have control of the car *held* insufficient to overcome a presumption of continuity of possession in defendant, who was shown to have been in possession of the car.

7. SALES—DAMAGES IN ADDITION TO VALUE OF AUTOMOBILE HELD ERRONEOUS.

Damages for depreciation were properly allowed in claim and delivery to recover an automobile, proceeding being brought by conditional vendor on failure of vendee to comply with obligations of the contract, but the court erred in the judgment in decreeing that in case of delivery of the property plaintiff recover such damages in addition to the value of the property, which was placed at $600; it appearing that $600 was the unpaid purchase price of the car, and plaintiff was only entitled to recover damages to the extent that it be made whole upon his contract.

8. STATUTES—COURTS MUST LOOK TO INTENTION OF LEGISLATURE.

It is elementary that in construing a statute the courts must look to the intention of the lawmaking body. (DUCKER, J., dissenting.)

9. EVIDENCE—HISTORICAL FACT THAT LEGISLATIVE COMMISSION REVISED LAWS.

It is an historical fact of which the court may take judicial notice that the legislature appointed commission to revise the laws, including the civil practice act, and that the commission was composed of the members of the supreme court. (DUCKER, J., dissenting.)

10. NEW TRIAL—WRITTEN NOTICE UNNECESSARY FOR BEGINNING OF TEN-DAY PERIOD WITHIN WHICH TO MOVE FOR NEW TRIAL.

Under Rev. Laws, 5323, providing that notice of intention to move for a new trial shall be served within ten days "after notice of the decision," the ten-day period begins to run from notice of the decision, however obtained; written notice being unnecessary. (DUCKER, J., dissenting.)

APPEAL from Ninth Judicial District Court, White Pine County; *C. J. McFadden,* Judge.

Action by the Studebaker Brothers Company of Utah against A. B. Witcher and others. Judgment for plaintiff, and defendants appeal. **Modified and affirmed. Petition for rehearing denied.**

*G. F. Boreman,* for Appellants:

The judgment of the lower court was improper. The same should be reversed, with instructions to enter judgment in favor of appellant.

Appellant's possession was peaceably and lawfully acquired. It must therefore be shown that a demand was made upon him and that he refused to deliver possession. A detention of the property by him did not become unlawful until he had been apprised of respondent's claim and had refused to recognize it, by refusing delivery. Where the possession of the defendant has been peaceably and lawfully acquired, a demand is a necessary prerequisite to recovery by the plaintiff. Jumiska v. Andrews, 92 N. W. 470; Caldwell v. Pray, 2 N. W. 52; Keller v. Robinson, 38 N. E. 1074; Combs v. Bays, 49 N. E. 358; Galvin v. Bacon, 25 Am. Dec. 258; Ludden v. Sumter, 25 S. E. 150; Ellis v. Simpkins, 45 N. W. 646; Plana Mfg. Co. v. N. P. E. Co., 53 N. W. 202.

Appellant was not in possession of the car at the time of the commencement of the suit. To maintain replevin it must appear that the defendant was in possession at the time of the commencement of the action. Gardner v. Brown, 22 Nev. 156; Robb v. Dobrinski, 78 Pac. 101; Riciotto v. Clement, 29 Pac. 414; Richards v. Morey, 65 Pac. 886; Burr v. McCallum, 80 Am. St. 677; Kierbow v. Young, 8 L. R. A. (N.S.) 216; McCormick v. Woulph, 76 N. W. 939; West v. Graff, 55 N. E. 506; Myrick v. Nat. Cash Register, 25 South. 155.

Whether a transaction constitutes a conditional sale or a chattel mortgage ultimately depends on the intention of the parties, as expressed by and ascertained from their conduct and the attendant circumstances, and from the terms of the agreement entered into by them. In doubtful cases the transaction will be construed as a

mortgage, rather than as a conditional sale. Mathews v. Sheehan, 69 N. Y. 585; 24 R. C. L. 744; 11 C. J. p. 412.

The mere fact that by agreement the title is to remain in the vendor until the notes for the purchase price are paid, does not necessarily import that the transaction was a conditional sale. Chicago Ry. Equip. Co. v. Merchants' Bank, 136 U. S. 268; Young v. Phillips, 169 N. W. 822·; Atkinson v. Japink, 152 N. W. 1079.

The provisions of the agreement indicate a mortgage, rather than a conditional sale. Tompkins Co. v. Monticello C. O. Co., 137 Fed. 630.

There was no waiver of notice of the decision of the lower court. Keane v. Murphy, 19 Nev. 95. Written notice was necessary, unless waived by facts appearing in the records, files, or minutes. Mere actual notice is· insufficient. Mallory v. See, 129 Cal. 356. Where a notice is authorized or required in legal proceedings, written notice is understood. 29 Cyc. 1117; Pierson v. Lovejoy, 53 Barb. 407; McEwen v. Montgomery, 5 Hill, 101; In Re Cooper, 15 Johns. 533; Norton v. New York, 38 N. Y. S. 90; State v. Elba, 34 Wis. 169.

Counsel for respondent served written notice of the decision, thereby indicating their construction of the· law. Under the doctrine of contemporaneous construction, a course of conduct which indicates a particular understanding of a statute will be given great weight by the court in determining its real meaning. 36 Cyc. 1139; Nimrod Coal Co. v. Stevens, 67 N. E. 389.

*Chandler & Quayle,* for Respondent:

·Demand is required only when the property sought is in the lawful possession of another. Whitman M. Co. v. Tritle, 4 Nev. 494; Ward v. Carson R. W. Co., 13 Nev. 44; Hanson v. Chiatovich, 13 Nev. 393. Under the execution sale appellant obtained only such right, title, and interest as the judgment debtor had in and to the automobile on the day execution was levied. Rev. Laws, 5296; Hanson v. Chiatovich, supra.

It was not necessary to prove possession in appellant

at the time of the commencement of the action. The common-law rule was that an action in replevin could not be maintained against a defendant who was not in possession at the time the demand was made or suit commenced. This still remains the general rule, but "the one important exception being cases in which the defendant has parted with the property in bad faith." Andrews v. Hoeslechm, 18 L. R. A. (N.S.) 1265; 23 R. C. L. 876; Holliday v. Poston, 38 S. E. 449.

A person in possession of goods without right cannot avoid an action of replevin by transferring the possession to another, even though the transfer be made before the commencement of the suit. Helman v. Withers, 30 N. E. 5; Singer S. M. Co. v. Robertson, 127 N. W. 866.

If necessary to sustain the judgment, this action may be regarded, under the pleadings and proof, as one for conversion, in which, clearly, possession in defendant at the commencement of the action need not be proved. Faulkner v. Bank, 62 Pac. 463; Benzler v. Van Fleet, 152 Pac. 736; Dennison v. Chapman, 39 Pac. 61; Bedolla v. Williams, 115 Pac. 747; Townsend v. Hagar, 72 Fed. 949; Lytton Mfg. Co. v. House Lumber Co., 77 S. E. 233; Bradburn v. Roberts, 61 S. E. 617.

Possession in appellant at the commencement of the action was legally proved. The law presumes, in the absence of a contrary showing, that such possession continued to the time the action was commenced. "Likewise, possession being a fact continuous in its nature, when its existence is once shown, it will be presumed to continue until the contrary is proved." 10 R. C. L. 872; Table Mountain Co. v. Waller's Co., 4 Nev. 219; 1 Jones, Evid., sec. 58a; Wigmore, Evid., sec. 2530; O'Neil v. N. Y. M. Co., 3 Nev. 141; Dixon v. Ahern, 19 Nev. 422; Wails v. Farrington, 116 Pac. 428.

The original contract was not a chattel mortgage, but a conditional sale. Uniform Sales Act, Stats. 1915, p. 199. "Where the buyer is by the contract bound to do

anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer." Benj., Sales, 3d ed. sec. 320; Harkness v. Russell, 118 U. S. 663; Bierce v. Hutchins, 205 U. S. 340; Bryant v. Swafford, 214 U. S. 279; Bailey v. Baker, 239 U. S. 268; In Re Newton & Co., 153 Fed. 841; Big Four I. Co. v. Wright, 207 Fed. 535; In Re Columbus Buggy Co., 143 Fed. 859; Studebaker Bros. Co. v. Mau, 80 Pac. 151.

The court did not err in awarding damages. The impairment of its value, and the deterioration from the use of the car, justified the court in awarding damages. 34 Cyc. 564; Morris v. Allen, 121 Pac. 690; Blackie v. Cooney, 8 Nev. 41.

Appellant's notice of intention to move for a new trial came too late. Stats. 1907, p. 359; Rev. Laws, 5323. His counsel was present in court when the decision was rendered, and asked to be advised of the entry of formal judgment. These facts constitute waiver of right to notice of decision, even in those jurisdictions where written notice is required by the statute. Gardner v. Stare, 67 Pac. 5; Barron v. Deleval, 58 Cal. 95.

By the Court, DUCKER, J.:

This is an action of claim and delivery under the statute, brought to recover the possession of a certain automobile with equipment and accessories. The prayer of the complaint is as follows:

"Wherefore, plaintiff demands judgment against the defendants for the recovery of the possession of said property, goods and chattels, or for the sum of $600, the value thereof, in case a delivery cannot be had, together with $350 damages, and for its costs of suit."

The plaintiff, respondent here, prevailed in the lower court and judgment was entered to the effect that the plaintiff recover from the defendants the possession of

the property described in the complaint, together with $150 damages, and in case delivery thereof could not be had the sum of $600, the value of the property, in addition to its said damages and costs. A motion for a new trial was made, which was denied by the court. From the judgment and order denying the motion for a new trial, the defendant appealed; the defendant Witcher appealing separately from the other defendants. This is the appeal of the defendant Witcher.

The trial court denied the motion upon the ground, among others, that appellant lost his right to a new trial by his failure to apply therefor within the time allowed by law. This is one of the questions presented by the assignment of errors. Respondent asserts that the motion was properly disregarded because not made within the time prescribed by the statute governing such cases, and for the further reason that the facts show a waiver of the right. The admitted facts bearing upon the question are as follows:

On November 30, 1918, the court, in the presence of the attorneys for appellant and respondent, orally rendered its decision in favor of the respondent in open court, and directed the attorneys for the latter to prepare findings and judgment in accordance with the decision. It was thereupon agreed between the attorneys for appellant and respondent that the attorney for appellant should be advised immediately upon the entry of judgment in order that he might file a bond to stay execution pending a motion for a new trial. On December 16, 1918, respondent filed and served upon the respective attorneys for appellant and his codefendants written notice of the decision of the court. On December 21, 1918, the appellant on his own behalf filed with the clerk of the court and served upon counsel for respondent their several notices of intention to move for a new trial. It thus appears that appellant's notice of intention to move for a new trial was not filed or served upon respondent within ten days after the oral decision

was rendered by the court, but within ten days after receiving said written notice of the decision. His counsel contends that such written notice is required by statute and that he was therefore within the time prescribed by law.

The question turns upon the meaning of section 381 of the present civil practice act of this state, concerning the kind of notice of the decision of the court required to be given to the party who may desire to move for a new trial. Section 197 of the old act adopted in 1869 (Comp. Laws, 3292) in respect to this requirement read, "Within ten days after receiving written notice of the rendering of the decision of the judge," and remained unchanged until the adoption of our present civil practice act in 1912. Section 381 of this latter act, containing this requirement, reads:

"The party intending to move for a new trial must, within five days after the verdict of the jury, if the action was tried by jury, or within ten days after notice of the decision of the court, or referee, if the action was tried without a jury, file with the clerk, and serve upon the adverse party, a notice of his intention, designating the grounds upon which the motion will be made and whether the same will be made upon affidavits or upon the minutes of the court." Rev. Laws, 5323.

It will be observed that while the phraseology of the requirement is slightly altered in the latter provision, there is no substantial change except in the omission of the word "written." It is suggested that this may have been an inadvertent omission on the part of the legislature. We see nothing, however, in the language of the entire provision to warrant this assumption, and are inclined to the other view taken by counsel for appellant that the word "notice" was used in the sense of written notice, as commonly meant in judicial proceedings. In 29 Cyc. 1118, the rule is thus unqualifiedly stated:

"The rule is well settled that where a notice is required

or authorized by statute in any legal proceedings the notice must be in writing." Note 33; Pearsons v. Lovejoy, 53 Barb. (N. Y.) 407; In Re Cooper, 15 Johns. (N. Y.) 533; Mason v. Kellogg, 38 Mich. 132; State v. Elba, 34 Wis. 169.

The reason for a rule which assumes that written notice is intended when notice is required in a statute prescribing legal proceedings is as sound as it is apparent. Contests arising from mistakes or misunderstandings which often might operate to unjustly deprive a party of his day in court, or otherwise result in the prejudice of a legal right, are thereby avoided and a simple and definite practice obtained.

It must be presumed that the legislature of this state, when it enacted the statute containing said section 381, had knowledge of the state of the law in regard to the subject-matter involved. Clover Valley Land & Stock Co. v. Lamb, 43 Nev. 375, 187 Pac. 723. And it may likewise be credited with knowledge of the fact that the old practice act, of which the latter practice act adopted in 1912 is a revision, specifically required written notice to put in motion the time within which a party might give notice of his intention to move for a new trial. An intention, therefore, to change the meaning of notice in legal proceedings and thereby work a radical change in a statutory rule of practice uniformly extended by statute over a long period of time, ought not to be inferred in the absence of language furnishing the clearest evidence of such an intent. No reason of policy may be advanced for such a change, and, on the other hand, it seems incredible that the lawmaking body intended to abolish the simple and definite procedure of written notice, and substitute therefor a twilight zone wherein the conflicting statements of opposing parties would often be incapable of just solution as to the fact of actual notice. Such an interpretation would in many cases deprive a party of the right of appeal. Statutes giving the right of appeal are liberally construed in the

furtherance of justice so far as may be compatible with the due preservation of orderly procedure, and an interpretation that will work a forfeiture of such right is not to be favored.

As written notice of the decision of the court is meant in the requirement under consideration, and appellant filed and served his notice of intention to move for a new trial within ten days after receiving such written notice, he did not lose his right in this respect, unless the facts shown amount to a waiver of such right. If he lost his right to move for a new trial by waiver, the written notice subsequently given could not restore it.

Upon the question of waiver contended for by the respondent, its counsel have cited two decisions of the Supreme Court of California (Barron v. Deleval, 58 Cal. 95, and Gardner v. Stare, 135 Cal. 118, 67 Pac. 5), which we would discuss if we did not deem the question decided adversely to their contention in Keane v. Murphy, 19 Nev. 89, 6 Pac. 840. In the latter case counsel for defendant, who was the losing party, was in court when the oral decision was rendered and counsel for plaintiff directed by the court to prepare findings accordingly. Within a half hour thereafter one of the defendant's attorneys requested plaintiff's attorney "to add no more costs in entering the judgment than they could help," and plaintiff's attorney consented. Upon these facts the court held that there was no waiver of the right to have a written notice of the decision. The same state of facts appears here. The acts of the attorneys were similar. In Keane v. Murphy, supra, the attorney requested a simple favor concerning costs, and in the instant case the request was for immediate notification of the entry of judgment, that a bond to stay execution pending a motion for a new trial might be furnished. There is nothing in this request to indicate an intention to waive written notice of the decision.

"The legal presumption of a waiver of any right by a litigant will not be drawn, except in a clear case, and

especially not, when to allow such presumption would deprive a party of his day in court." State v. Murphy, 29 Nev. 255, 88 Pac. 337.

In the case just cited this court recognized the correctness of the ruling on the question of waiver in Keane v. Murphy, supra, and we also consider it sound in principle and controlling on the facts presented here.

Appellant's contention that the lower court erred in denying his motion for a new trial and in rendering judgment in favor of respondent, in addition to the point just discussed, is based principally upon the following grounds: First, that there was no evidence establishing the fact that a demand was made of the appellant by the respondent for the return of the property; second, that possession of the property by the appellant at the commencement of the action was not shown; and, third, that the court erred in admitting in evidence a certain contract marked Plaintiff's Exhibit A, and in holding that the same was a valid contract of conditional sale and not a chattel mortgage.

A statement of the facts affecting these questions is necessary. On April 2, 1917, one James D. Flamm, then a resident of Salt Lake City, Utah, made and executed to respondent a certain instrument in writing, which, omitting parts unnecessary to a determination of its legal effect and the rights of ownership and possession of the automobile in dispute, is in the following words and figures:

"Studebaker Conditional Sales Contract. * * * To Salt Lake (Branch). I, the undersigned purchaser, do hereby acknowledge having this day received from you one Studebaker motorcar 17—6 Model, touring, Serial No. 641363, motorcar No. 37431, for which I agree to pay you $850.00, of which I now pay you $250.00 and agree to pay you $600.00 as the balance of the purchase price of same, said balance being payable in installments evidenced by promissory notes, bearing interest at the rate of 8 per cent per annum from date as follows:

[Statement of notes and dates payable.]   *   *   *   It is agreed that the title to ownership in and right of possession of said motorcar are vested in you until said indebtedness and all other sums of money payable to you, whether evidenced by note, book account or otherwise, also any judgments which you, your successors or assigns may obtain thereafter shall have been fully paid in money, at which time ownership shall pass to me.  I agree to fully insure said motorcar and keep same insured against fire and theft for your benefit, paying the expense thereof, making policy payable to you as your interests may appear, and to deliver such policy to you upon request.  In case the said insurance is not procured as above provided, then you may at your option effect said insurance, and any outlay therefor shall be and become a debt payable under this contract on demand.  If any of my indebtedness shall become due and remain unpaid in whole or in part, or if said motorcar is removed or attempted to be removed from the state in which I now reside, or to be otherwise disposed of, or if I shall sell or incumber said motorcar, or in case of misuse or abuse thereof, or whether you shall deem the debt insecure, the full amount unpaid hereunder, including any notes given, shall become due and payable forthwith, and you may, without any previous notice or demand, and without legal process, enter into any premises where said motorcar may be found and take possession thereof, after which you may, at your option, make such disposition of said motorcar as you shall deem fit, and all payments made by me may be retained by you as liquidated damages for the use of said motorcar while in my possession, and not as a penalty, or said motorcar may be sold with or without notice either at public or private sale and the proceeds, less the expense of taking, removing, holding, and selling said motorcar, shall be credited upon the amount unpaid hereunder; or without such sale there may be credited upon the amount unpaid the fair market value of said

motorcar at the time of repossessing same, and in either
event, in consideration of the use and depreciation of
said motorcar, I promise and agree to pay the balance
forthwith. I agree to pay promptly when due all taxes,
assessments, license fees and other public charges which
may be levied upon or in respect of said motorcar. I
expressly waive as against this agreement all exemp-
tions and homestead laws and all claims for damages of
whatever nature, also any and all provisions of law
wherein and whereby it is required that any sum of
money shall be repaid to me or that said motorcar shall
be sold at public or private sale, and any part of the
proceeds accounted for or paid over to me. I acknowl-
edge the receipt of a true copy of this contract. James
D. Flamm, Purchaser, 724 W. South Temple (Address),
Salt Lake City (County), Utah (State or Province).
Witness: A. B. Harrison. Witness: ................."

"Accepted Apr. 6, 1917. Studebaker Bros. Co. of
Utah (Branch), by H. G. Crandall, Jr., Salesman."

At the time Flamm executed the above contract he
also executed and delivered to respondent the nine
promissory notes mentioned therein. The respondent
was the owner of the automobile when the contract was
entered into for the sale thereof, and then and there
received from Flamm the sum of $250, leaving a balance
due from him of $600 with interest as evidenced by said
notes. On June 30, 1917, in Ely, White Pine County,
Nevada, the car in question was sold on execution at a
sheriff's sale by the sheriff of said county for the sum
of $325, in satisfaction of a judgment rendered against
said Flamm in the justice court of Ely Township No. 1.
Appellant was the purchaser at said sale and the sheriff
delivered possession of the car to him, together with a
certificate of sale reciting that under the sale "all the
right, title and interest of the defendant, J. D. Flamm,
in and to the automobile in question was transferred to
the purchaser on execution."

Two or three days before July 16, 1917, appellant

placed the car in the Service First Garage in Ely, a garage belonging to the Lincoln Highway Garage Company of that city. He told witness Trembath, who was in charge of the garage, that the car belonged to one August Smith. Subsequently Trembath took instructions concerning the car from Smith and washed it at the latter's request.

On July 16, 1917, the day Trembath washed the car, Mr. Quayle, of the firm of Chandler & Quayle, attorneys for respondent, and Mr. Mathias, an owner in the Lincoln Highway Garage Company, visited the Service First Garage. They moved the car into a place in the garage where it would not interfere with the moving of other cars and by means of a chain and lock fastened one of the wheels to the frame or spring of the car. Quayle informed Trembath that he took possession of the car for the Studebaker Brothers Company, and if anything occurred in regard to it to tell any of the parties that the key was over at the office of Chandler & Quayle. He also informed Mathias that subsequent storage claims or charges would be paid by respondent, or Chandler & Quayle, as its agents.

On the 21st of July, 1917, appellant came to the garage in company with Mr. Jurich, and the former asked Trembath to help move some cars so that he could get the car out. Trembath told him that the car was locked up and that Mr. Quayle had the key. Appellant replied: "We will take care of that; all I ask you to do is to help me to move some cars." Trembath complied with appellant's request and Jurich took the chain and lock off the car and drove it out of the garage. Appellant then got into the car with Jurich and it was driven away. The witness does not know how the chain and lock were taken from the car, but heard the noise caused by the removal. When the car left the garage the body of the car was red in color. Subsequently, on August 29, 1917, Mr. Quayle saw a Studebaker automobile painted green standing on one of the

streets of Ely, which he identified by number as the car in question. Bartley J. Smithson, one of the defen- dants, was in the car, and Quayle told him that the car belonged to Studebaker Brothers Company. Smith- son disclaimed any interest in the car and stated that it belonged to a man down the street. The man referred to was George A. McDonald, also one of the defendants in the lower court. McDonald came up and took a seat in the car and Quayle asked him if he owned the car. He said, "No; he had an interest in it." In response to another question by Quayle as to who owned the car, he said that it belonged to a couple of foreigners up at the flat.

This action was commenced on September 6, 1917. The foregoing evidence, appearing in the bill of excep- tions, presents all of the facts having any bearing upon the questions to be considered. The witness Smithson stated that no demand was made on him by Mr. Quayle for possession of the car on behalf of the respondent. Thereafter Quayle took the stand, and in addition to other testimony given by him attempted to testify that he then and there made a demand for the possession of the automobile, on behalf of respondent, upon Smithson and McDonald, which was objected to by counsel for appellant, and ruled out of court.

We will first consider the question presented by the appellant's contention that the contract admitted in evidence is not a valid conditional sales contract, but, in effect, a chattel mortgage; and, not having been executed and recorded as required by the provisions of the statutes relating to chattel mortgages, is invalid and unenforceable against appellant, who was a subsequent purchaser at the sheriff's sale.

We will not consider this question from the standpoint of that contention made by counsel for respondent, that because the contract was entered into in the State of Utah and the property delivered there it must be deter- mined under the laws of that state. It is unnecessary to do so for the reason that the laws of the States of Utah

and Nevada concerning conditional sales and chattel mortgages, which have any bearing on the questions, are identical as to conditional sales .and substantially the same as to chattel mortgages; and we have found no authoritative decision of the courts of the former state construing a contract substantially the same in all its terms as the one under consideration. The lex loci contractus is therefore immaterial.

1.   There seems to be little difficulty in determining from the terms of the contract that the parties intended it to operate as a conditional sales contract and not by way of mortgage. Its distinguishing feature in this respect is the retention of the title to the property in the seller until the full payment of the price is made by the buyer. This condition precedent to the transfer of title is contemplated by the uniform sales act. Subdivision 1 of section 20 of this act reads:

"Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation, reserve the right of possession or property in the goods until certain conditions have been fulfilled. The right of possession or property may be thus reserved notwithstanding the delivery of the goods to the buyer or to a carrier or other bailee for the purpose of transmission to the buyer." Stats. 1915, p. 200.

But appellant insists that the provision in the contract "All other sums of money payable to you, whether evidenced by note, book account or otherwise, also any judgment which you, your successors or assigns may obtain thereafter shall have been fully paid in money, at which time ownership shall pass to me," runs it into a chattel mortgage. This provision is of such a general nature that we do not regard it as of much importance in construing the character of the contract. It does not relate to any specific indebtedness. It does not appear from the terms of the contract that there was any prior transaction between the parties out of which

an indebtedness could arise. Again, the agreement as to "all other sums of money payable to you" is not consistent with an intention on the part of the parties to provide for the payment of money to the seller to satisfy an indebtedness growing out of .the transaction itself, and referable to the agreement wherein the seller, on failure of the buyer to insure the automobile against fire or theft, is given the option to so insure it, and any outlay made a debt payable on demand.

If there were any antecedent indebtedness for which title to the property was retained as security, as counsel , supposes in his argument, it is not unreasonable to assume that some specific reference would have been made to it, inasmuch as the parties were at pains to evidence all indebtedness for the purchase of the property by the promissory notes mentioned in the contract and admitted in evidence at the trial.

There is nothing in the provisions concerning insurance to indicate that the parties regarded their transaction as a mortgage. These provisions were merely intended to provide protection for the property at the expense of the buyer and place the risk of its loss by theft or fire on the buyer, who had the use and possession of it.

In Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. 275, the contract in question contained a clause requiring the vendee to keep the property insured for the benefit of the vendor, yet the court held the contract one of conditional sale against the contention of an absolute sale with a mortgage back.

It is strongly urged that those provisions in .the contract whereby, in default of the obligations imposed on the buyer, the seller is empowered to take possession of the property, credit the buyer with the fair market value thereof, and hold him for the balance of the purchase price, or sell it at public or private sale, credit the proceeds, less the expense incurred in taking possession, on the purchase price and hold the buyer for the

balance, clearly indicate a mortgage. Appellant's counsel contends that these provisions bring the contract within the rule announced in Atkinson v. Japink, 186 Mich. 335, 152 N. W. 1079, and recognized in Young v. Phillips, 203 Mich. 566, 169 N. W. 822, as a test to distinguish an absolute sale with a mortgage back from a purely conditional sale. We must concede that the Michigan cases just cited are authority for the construction claimed, but we find that the weight of authority from other jurisdictions is against them in this respect.

In Harkness v. Russell, 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285, a case taken on appeal from the Supreme Court of Utah, the contract, expressing the condition that title to the property does not pass until full payment, also contained a stipulation that in case the property was taken back by the seller the same could be sold at public or private sale without notice, or the seller might, without sale, indorse the true value of the property on the note and collect any balance due thereon after such indorsement as damages and rental for the property. The court held the contract one of conditional sale.

In Studebaker Brothers Co. v. Mau, 13 Wyo. 358, 80 Pac. 151, 110 Am. St. Rep. 1001, the contract involved, reserving title on condition of payment, was held to be one of conditional sale, notwithstanding provision therein giving the seller the right to take possession of the property on deeming itself insecure and to sell the same at public or private sale without notice, and apply the proceeds on the note given, or without sale, indorse the true value of the property on the note. The buyer agreed to pay on the note any balance due thereon after indorsement as damages and rental of the property.

In Freed Furniture & Carpet Co. v. Sorensen, 28 Utah, 419, 79 Pac. 564, 107 Am. St. Rep. 731, 3 Ann. Cas. 634, there was a contract with a like condition as to the reservation of title in the seller until full payment by the buyer. The contract also contained provisions

empowering the seller on certain contingencies to take immediate possession of the property and to sell the same at public or private sale, and without notice to the maker, and from the proceeds of such sale pay the balance then due on said note, together with all costs for taking and selling said property, holding the residue, if any, subject. to the disposal of the buyer. This contract was held to be a contract of conditional sale.

That part of the contract in the foregoing case where, after recaption and sale and the application of the proceeds of any sale to the payment of the balance due on the note, the seller is required to hold any residue subject to the disposal of the buyer, is certainly more evidentiary of a chattel mortgage than anything in the contract before us. But the court was of the opinion that this yielding over surplus clause. was not inconsistent with the provision providing for the retention of title in the vendor until payments in full were made.

In the case of Dodson Printers' Supply Co. v. Corbett (Fla.) 82 South. 804, recaption, sale, application of the proceeds to the payment of the debt, and payment of the surplus to the vendee were all stipulated in the contract, but the court was of the opinion that these did not affect the real character of the instrument retaining title in the seller as a contract of conditional sale.

We have seen that in the cases just cited the courts did not consider clauses providing for recaption and sale of the property, and a yielding over of the surplus to the buyer after payment of the debt, or providing for the payment to the seller of any deficiency, of sufficient significance to give to the contract an effect different from that expressed in the condition retaining title in the vendor until full payment made. Nor do we consider the clauses in the contract under consideration whereby the buyer agrees to pay any deficiency, inconsistent with the character of the instrument as a contract of conditional sale. It merely obligates him for the absolute price of the property he undertakes to buy. This clause

is in harmony with the condition reserving title in the seller. We conclude that the instrument in question is a contract of conditional sale. As such it is valid against the appellant and was properly admitted as tending to show, in connection with other evidence, title and right of possession in the respondent to the property involved.

2-4. We will now discuss the question presented by appellant's contention that a demand for the return of the property prior to the commencement of the action was necessary in order to maintain it. In an action of this kind a demand for the return of the property and a refusal establish a conversion. When a conversion is otherwise shown by the evidence, a demand is unnecessary. Perkins v. Barnes, 3 Nev. 557; Whitman v. Tritle, 4 Nev. 494; Ward v. Carson River Wood Co., 13 Nev. 44; Hanson v. Chiatovich, 13 Nev. 397. Respondent's right to retake possession of the automobile upon default of the obligations imposed upon Flamm in the contract of sale was absolute, and the exercise thereof through its agent Quayle, on the 21st day of July, 1917, made respondent's possession lawful. When, therefore, appellant subsequently came to the garage, and under circumstances tending to show force resumed possession of the property, his taking it from the lawful possession of the owner was tortious and amounted to a conversion. Counsel for appellant contends that the taking of the automobile by the appellant was not wrongful or unlawful, for the reason that neither he nor the sheriff, who conducted the sale, had any notice of respondent's claim to the property. It is difficult to see how the absence of such notice could affect the right of possession. Appellant had no better title than Flamm. Through his purchase and the certificate of sale he succeeded to all of Flamm's right, title, and interest in the property. Flamm had no interest in the property beyond a right to purchase it on condition, which was subject to forfeiture for nonpayment and by the violation of other obligations imposed on him in his contract with respondent. When

the respondent, by reason of Flamm's failure to keep his contractual obligations, exercised its right to retake possession of the property under the terms of the contract, Flamm's interest and appellant's title met with a common fate and were extinguished.

If it be conceded that appellant had no notice of respondent's claim of title when he took the car from the garage (which is questionable in view of the fact that he evinced no surprise when informed that the car was locked and the key at Chandler & Quayle's office and came prepared to remove the chain and lock), this fact could not alter the legal status of the matter. The car belonged to the respondent and was then rightfully in its possession. The fact that appellant had no notice, if it be a fact, could not make his act of taking the car out of the rightful possession of the owner lawful. The effect of appellant's act was to deprive respondent of the possession of its property lawfully acquired in pursuance of the right given it in its contract with Flamm, and however free from knowledge of respondent's claim appellant may have been, his act was, nevertheless, tortious in the eye of the law. As said in Velsian v. Lewis, 15 Or. 543, 16 Pac. 633, 3 Am. St. Rep. 188:

"The intent with which the wrongful act is·done on the part of the defendant is not an essential element of the conversion. It is enough that the true owner has been deprived of his property by the unauthorized act of some person who assumes dominion or control over it. It is the effect of the act which constitutes the conversion."

The effect of appellant's act on the 21st day of July, 1917, was to deprive respondent of the lawful possession of its property. As the evidence established a conversion, it was unnecessary for the respondent to prove a demand.

It has been held by this court in an action of claim and delivery that to warrant a recovery of the property involved it must be shown to have been in the possession

of the defendant at the time of the commencement of the action. Gardner v. Brown, 22 Nev. 156, 37 Pac. 240. See, also, Fapp v. McQuillan, 38 Nev. 117, 145 Pac. 962, and Nielsen v. Rebard, 43 Nev. 274, 183 Pac. 984.

5. In the latter case the question arose upon the pleadings, but in the two former cases it appeared that the property had been transferred by the defendant prior to the action. That is not the case here. This action was commenced on September 6, 1917. Possession was shown to be in appellant on July 16, 1917. It nowhere appears that he subsequently sold the property to any one. As far as the record discloses he is the only person shown to have invested any money in the property since it was taken from the possession of Flamm. Under such circumstances we think continuity of the possession of the property by the appellant may be presumed.

It is a uniformly accepted general rule that—

"Proof of the existence at a particular time of a fact of a continuous nature gives rise to the inference, within logical limits, that it exists at a subsequent time." 22 Cyc. 86.

This rule has frequently received practical application in the decisions of this court. O'Neil v. New York Mining Co., 3 Nev. 141; Table Mountain Gold Mining Co. v. Waller's Defeat Silver Mining Co., 4 Nev. 218, 97 Am. Dec. 526; Hanson v. Chiatovich, 13 Nev. 395; Tonopah and Goldfield Railroad Co. v. Fellanbaum, 32 Nev. 278, 107 Pac. 882, L. R. A. 1918D, 584.

Relating to the fact of possession, the rule is thus stated in 10 R. C. L. 872:

"Possession being a fact continuous in its nature; when its existence is once shown it will be presumed to continue until the contrary is proven."

The case of Wails v. Farrington, 27 Okl. 754, 116 Pac. 428, 35 L. R. A. (N.S.) 1174, is one where the possession of personal property was involved, and is illustrative of the presumption of continuity in this respect. This was

a suit in replevin brought to obtain possession of a
certain stock of jewelry, or its value. Possession was
shown to have been delivered to one of the defendants
on February 15, 1904, and such possession was presumed
to have continued to the time of the commencement of
the suit on December 9, 1904.

Counsel for appellant does not deny the principle of
continuity asserted. He contends, however, that the
evidence discloses a change of possession of the property
from appellant, prior to the commencement of the action,
which prevents its application. This contention is based
on the fact that on the 29th of August, 1917, the defen-
dants McDonald and Smithson had the car on one of
the streets of Ely, on the occasion when Mr. Quayle
interviewed them concerning it, and on the former's
statement to the effect that he had an interest in it, but
that it belonged to a couple of foreigners up at the flat.

6. We cannot accept counsel's view in this respect.
It was proved that appellant took possession of the car
on July 16, 1917. From this fact arose the presumption
of the continuance of his possession. Its effect was to
create a prima-facie case that his possession was con-
tinuing at the time of commencement of the action.
It created the necessity of evidence to overcome this
prima-facie case of possession. The evidence relied on
is most unsubstantial. The mere fact that McDonald
and Smithson were in the car, and the latter seemed to
have control of it, is entirely consistent with the theory
that they were in possession as the agents of appellant.
As previously stated, there is no evidence of any trans-
fer from the appellant. The unsworn statement of
McDonald that the property belonged to a couple of
foreigners up at the flat is vague and evasive. As
against the presumption of appellant's possession at the
commencement of the action, these statements are
insufficient to form even the basis of a contrary
presumption.

7. There was no error in the action of the court in
awarding damages to the respondent and in the amount

fixed in the judgment. The defendants had been using the car after appellant took possession of it, and it is a recognized fact that automobiles constitute a class of property peculiarly subject to rapid depreciation in value through use and lapse of time. These matters were therefore properly considered by the court as elements of damage, and sustain the judgment as to this feature. The court, in its judgment as we have seen, ordered that respondent recover the car, with equipment and accessories, together with $150 damages, and in case delivery of the property could not be had, then that the respondent recover the sum of $600, the value of said property, in addition to said damages. It appears from the evidence that $600 was the unpaid purchase price of the car. The respondent was only entitled to recover damages to the extent that it be made whole upon its contract. Therefore, under the facts of the case, the judgment, in so far as it awards damages in the event a delivery of the property cannot be had in addition to the recovery of the value of the property, is erroneous. Morris v. Allen, 17 Cal. App. 684, 121 Pac. 690. The respondent, however, is entitled, in case a delivery of the property cannot be had, to recover its value as fixed by the judgment of the court, together with interest at the legal rate from the taking of the property to the date of judgment. Wells on Replevin (2d Ed.) sec. 537; Just v. Porter, 64 Mich. 565, 31 N. W. 444. See, also, Blackie v. Cooney, 8 Nev. 41.

It is ordered that the district court modify its judgment in accordance with this opinion, and, as so modified, the judgment will stand affirmed.

SANDERS, C. J., and COLEMAN, J. (concurring) :

We concur in the foregoing opinion of our learned associate, except on the point as to whether or not written notice of the decision of the district court was necessary under the facts of the case. Our civil practice act (section 197 [section 3292, Cutting's Comp. Laws]), as it existed prior to the revision, provided that a person intending to move for a new trial should serve

notice of his intention to do so within ten days "after receiving written notice" of the decision, whereas the revision (Rev. Laws, 1912, 5323) provides that such notice of intention to move for a new trial shall be served within ten days "after notice of the decision."

8-10. Of course, it is elementary that in construing a statute the courts must look to the intention of the lawmaking body. The question is: What was the intention of the legislature in omitting the word "written" in the revision? It is a historical fact, of which we may take judicial notice, that the legislature appointed a commission to revise our laws, including the civil practice act. That commission was composed of the then members of this court, one of whom had served twelve years as a district judge and was serving his second term as a member of this tribunal. Another had been a member of our legislature, district attorney of the most populous county in the state, and was serving his second term as a member of this court, and the other had been a member of the legislature and attorney-general of the state. Can we presume that these men omitted the word "written" from the revision without a reason? Evidently not. Hence we see no escaping the conclusion that it was the purpose, both of the commission and of the legislature, to fix the time for the beginning of the running of the ten-day period within which the notice of intention to move for a new trial should be served at the moment notice of the rendition of the decision was received. The Supreme Court of California, in Cal. Imp. Co. v. Baroteau, 116 Cal, 136, 47 Pac. 1018, in passing upon the question here involved, says:

"The appellant contends that there was no notice served on him of the filing of the findings, and that therefore the time for making a motion for a new trial had not expired when such motion was made; but section 659 provides now only that the motion must be made

within ten days 'after notice of the decision'; and it has been definitely settled that where it appears affirmatively that the party moving for a new trial had actual notice of the decision, no formal service of a written notice is necessary. Gray v. Winder, 77 Cal. 525, 20 Pac. 47; Mullaly v. Society, 69 Cal. 559, 11 Pac. 215; Wall v. Heald, 95 Cal. 365, 30 Pac. 551; Dow v. Ross, 90 Cal. 562, 27 Pac. 409."

The notice of intention to move for a new trial not having been given and filed within ten days from the date when appellant received notice of the decision of the court, it came too late, and hence nothing can be considered upon this appeal except the judgment roll, of which the findings of the trial court are a part. We have considered the judgment roll, and have come to the conclusion reached by our associate as to the points of law involved, and therefore concur in the order embodied in his opinion.

## ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.