CONSOLIDATED GOLDACRES CO. v.
COMMISSIONER OF INTERNAL
REVENUE.

No. 3511.

Circuit Court of Appeals, Tenth Circuit.

Dec. 12, 1947.

Rehearing Denied Jan. 14, 1948.

Frazer Arnold, of Denver, Colo. (Arnold Weinberger, of Denver Colo., on the brief), for petitioner.

Hilbert P. Zarkey, of Washington, D. C. (Sewall Key, Acting Asst. Atty. Gen., Robert N. Anderson and Irving I. Axelrod, Sp. Assts. on the brief), for respondent.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

By the Second Revenue Act of 1940, § 201, Sec. 710 et seq. Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 710 et seq., Congress imposed a graduated tax upon excess corporate profits as therein defined. Section 712 provided for an excess profits credit against such income, to be computed under Sections 713 or 714. The credit computed under Section 714 was based on average invested capital, including borrowed invested capital defined in Section 719(a) (1), (b) as 50 per cent of the average daily "outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust."

██ In its excess profits tax return for the year ended November 30, 1942, Petitioner, Consolidated Goldacres Company (herein called Consolidated), computed its excess profits credit on its average invested capital under Section 714, and included therein as average borrowed invested capital $221,476.59, representing 50 per cent of its average daily obligations to Western-Knapp Engineering Company (herein called Western) under a "Contract of Conditional Sale" and "Supplemental Contract of Conditional Sale". The item was excluded by the Commissioner and the Tax Court affirmed, holding that the contract was not an "outstanding indebtedness" evidenced by a "note", "mortgage", or any other type of instrument enumerated in Section 719(a) (1). 8 T.C. 87. Consolidated has appealed, and the sole question presented is whether the Tax Court's judgment, based upon agreed facts, is warranted in law. John Kelley Co. v. Commissioner, 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278; Dobson v Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248.

Under the terms of the written "Contract of Conditional Sale" and a "Supplemental Agreement on Conditional Sale", both dated July 26, 1941, Western agreed to sell and Consolidated agreed to buy certain listed personal property, to be used in the operation of a cyanide and diesel electric plant. The plant was to be installed complete by Western on Consolidated's property, Western furnishing all labor, material, and equipment necessary for such installation. In consideration of the personal property and the installation of the plant, Consolidated agreed to pay Western $475,000 in monthly cash payments equal to $1.50 per ton for the first 150,000 tons of ore and concentrates milled at the plant, and thereafter $1 per ton, with the option of paying any additional amounts. The monthly payments were to continue until the total purchase price was paid, without interest, except delinquent installments were to bear interest at the rate of 6 per cent per annum until paid. The tonnage, upon which the amount of the installments were to be based, was to be measured by the total amount of ore and concentrates milled at the plant, whether from the mining claims of Consolidated or other property. Consolidated's claims were to be mined continuously, and the plant operated at its maximum capacity, under the supervision of a manager to be selected by Western and employed by Consolidated, at a minimum salary of $500 per month until full payment of the purchase price under the agreement. During this

time, Western was to have access to Consolidated's office records and books relating to the tonnage account. Title to all of the property installed on the premises was to remain in Western until the full purchase price was paid, at which time Western agreed to execute a bill of sale for the same, and Western agreed to carry and pay for fire insurance coverage on the equipment and building until the full purchase price was paid. In the event of default by Consolidated, Western had the right to retain all payments theretofore made in consideration of the use of the personal property, and to sell the property without notice at public or private sale and credit the proceeds upon the unpaid purchase price, Western agreeing to pay any balance thereafter remaining unpaid under the contract; or, at its option, Western could take exclusive possession, control and management of the plant and mining claims of Consolidated, provided that if, upon the operation of the mines and plant, Western obtained sufficient funds to discharge the obligations under the contract, any surplus would become the property of Consolidated, and the property forthwith redelivered to it.

As a result of the decrease in production at the plant under orders of the War Production Board, the parties agreed in December 1942 that in lieu of the monthly payments stipulated in the contract, the operating profits would be divided 40 per cent to Consolidated and 60 per cent to Western until such time as the tonnage milled was in excess of 6,000 tons per month. As of July 31, 1945, Consolidated had paid to Western under the contract $129,384 in 1942, $73,427.01 in 1943, $108,258.91 in 1944 and $53,057.30 in 1945.

■ Following its decisions in Journal Publishing Co. v. Commissioner, 3 T.C. 518; Wm. A. Higgins & Co., Inc., v. Commissioner, 4 T.C. 1033, and Flint Nortown Theatre Co. v. Commissioner, 4 T.C. 536, the Tax Court proceeded upon the premise that "borrowed invested capital" must be evidenced by one of the specific types of instruments enumerated in Section 719(a) (1).

In Journal Publishing Co. v. Commissioner, supra, it was argued that the enumeration of various types of instruments in Section 719(a) (1) was not necessarily intended to limit borrowed capital to indebtedness evidenced by such instruments. Referring to the legislative history of the Section, the Court there observed that the Congress had deliberately deleted from the original draft the words "or any other written evidence of indebtedness" following the specific terms used, thus evidencing a legislative intention to restrict the meaning of the term "outstanding indebtedness" to the enumerated definitive types of instruments. See H.R. 2894 accompanying H.R. 10413; Senate Report No. 2112, p. 14; H. R. 3002, p. 12, 76th Congress 3rd Session. As further evidence of the legislative intent, the Court in the Journal Publishing Company case called attention to other tax legislation in which the Congress had either added the words "or other evidence of indebtedness" to specific terminology, or had left the definition of the word "indebtedness" to administrative regulations without defining the term. The Court finally concluded that since Section 719(a) (1) contained its own definition of "outstanding indebtedness", it was not for the Commissioner or the courts to add to or enlarge upon the statutory definition, citing Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268, 105 A.L.R. 756, and Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416. With that reasoning and conclusion we agree, but it is contended here that in any event, the instruments involved qualify as a "note" or in substance and effect a "mortgage" under Section 719 (a) (1).

■ In considering whether the instruments qualified as a "note", the Tax Court again relied upon its reasoning in the Journal Publishing Company case, where it was pointed out that since the definitive statute contained no definition of the word "note", the administrative regulations had construed the term as a "promissory note". Accepting that definition, the Tax Court in both the Journal Publishing Company case and here adopted the ordinary legal definition of the word "note" as "a written promise to pay a certain sum of money at a future time unconditionally". While recognizing that a note need not be in any particular form, the Court was

545

nevertheless of the opinion that the contract and supplemental agreement, when considered as one instrument, was bilateral in legal effect, with mutual obligations to be performed by both parties, and therefore did not meet the essential requirements of a "note" as that term was used in the statute.

Since, as pointed out by the Tax Court, the Congress did not define the term "note", we must conclude that it was intended to be used according to its ordinary legal acceptation. Crane v. Commissioner, 331 U.S. 1, 6, 67 S.Ct. 1047; Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484. A close analysis of the instruments convinces us that there was no unconditional promise to pay a certain sum of money at some future time. Consolidated's obligation under the contract was to pay a certain sum of money in monthly installments, equal to and contingent upon the amount of ore milled at the plant. The plant was to be operated at capacity, and failure to do so would constitute a breach, entitling Western to declare a default, for which it was granted optional remedies. In the event of default, and after the exhaustion of the remedies, Consolidated was liable for any unpaid balance of the purchase price, but the obligation thus imposed was not unconditional and unilateral. Consolidated was not bound to pay the purchase price until and unless Western installed the plant in accordance with specifications, and performed other obligations in connection with the maintenance and operation of the mill during the life of the contract. It is thus manifestly plain that the contract, not having the attributes of an ordinary note, cannot be so construed under Section 719(a) (1). See Daniel on Negotiable Instruments, Sec. 36; 7 Amer. Juris. p. 795.

In considering whether the contract might be "in substance" a "mortgage", the Tax Court, while recognizing that the title of the instrument was not necessarily conclusive, it was to be given consideration in connection with its content. In answer to the argument that the retention of title under the terms of the contract was for security only, and hence in effect a mortgage, the Court looked to the law of Nevada, where the contract was made, and concluded that under applicable Nevada statutes and decisions, an instrument, such as we have before us, would be construed in that State as a conditional sales contract and not a mortgage. Studebaker Bros. Co. v. Witcher, 44 Nev. 442, 195 P. 334; Sellai v. Lemmon, 62 Nev. 330, 151 P.2d 95. It also pointed to other legislation in which the Congress had recognized a distinction between a conditional sales contract and a mortgage by the use of both terms in the text of the legislation, 11 U.S.C.A. § 203, sub. o (6) and other legislation in which conditional sales contracts were omitted where the word "mortgage" was used. 11 U.S.C.A. § 207, sub. c (10). Accordingly, the Court thought it significant that the Congress had omitted any reference to conditional sales contracts in Section 719(a) (1). It characterized the contract as one for the erection of a plant by Western, with title expressly retained by it until full payment was received in a certain manner, but in general according to the amount of ore and concentrates milled in the plant. It thus came to the conclusion that such an arrangement came neither within the letter nor the spirit of the statute authorizing a credit for borrowed invested capital in the computation of excess profits tax.

Words used in a federal taxing statute must of course have a uniform meaning, and are therefore not to be construed according to state law unless the Congress has shown an intention to do so. Estate of Putnam v. Commissioner, 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023, 158 A.L.R. 1426; Lyeth v. Hoey, 305 U.S. 188, 59 S. Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410; United States v. Pelzer, 312 U.S. 399, 61 S.Ct. 659, 85 L.Ed. 913. It follows that the Nevada statutes and decisions defining the term "mortgage" and "conditional sales contract" are applicable only as "a reasonable source of guidance". Brewster Shirt Corp. v. Commissioner, 2 Cir., 159 F.2d 227, 229.

As we have seen, the Congress has deliberately chosen words to define the type of "outstanding indebtedness" which will be included in the excess profits credit, and those words should be given their ordinary meaning in common usage. It is

true, as pointed out by Consolidated, that in terms of liability imposed, there may be little, if any, distinction or difference between the legal relationship created by a mortgage and a conditional sales contract. Both instruments are intended to provide a measure of security for the performance of an incurred obligation, but they are not used synonymously or interchangeably to describe or define the legal relationship created thereby. Courts have generally recognized the legal difference between the two. Sellai v. Lemmon, 62 Nev. 330, 151 P.2d 95; Studebaker Bros. Co. v. Witcher, 44 Nev. 442, 195 P. 334; Zweig v. Schwartz, D.C. Mun.App., 31 A.2d 857; Gray v. Brasee Sup., 14 N.Y.S.2d 687. Especially where, as here, it becomes necessary to discern the legislative intention. See In re Halferty, 7 Cir., 136 F.2d 640, 148 A.L.R. 432; In re Lake's Laundry, 2 Cir., 79 F.2d 326, 102 A.L.R. 247.

It is urged that the reasoning applied and conclusions reached by the Tax Court are directly opposed to those in Brewster Shirt Corp. Co. v. Commissioner, 2 Cir., 159 F.2d 227, decided subsequent to the decision in this case. In that case, accounts receivable were assigned by the taxpayer to a factor in return for advances made. Under the factoring agreement, the taxpayer was unconditionally liable for the amount of any accounts so assigned which were not later paid to the factor. In reversing the Tax Court, the Circuit Court observed that factoring agreements were common means for securing loans on accounts receivable, and that under such agreements, accounts receivable were "collateral security" for the satisfaction of the advancements. The Court held that the indebtedness created by such an arrangement was "evidenced by instruments which constituted a mortgage". We cannot say that the instruments involved here, denominated a conditional sales contract, constituted a mortgage.

It may be that the philosophy of the two cases are incongruous. The Court in the Brewster case apparently did construe the definitive terms in the statute more liberally, but it was also at pains to distinguish its facts from those decisions upon which the Tax Court relied, and which we deem controlling here.

We conclude that the Tax Court's judgment is warranted in law, and it is therefore affirmed.