**BERNARD REALTY CO. v. UNITED STATES.**

Nos. 10314, 10315.

United States Court of Appeals
Seventh Circuit.

May 7, 1951.

Theron L. Caudle, Asst. Atty. Gen., Ellis N. Slack, Harry Baum, Special Assts. to the Atty. Gen., Melva M. Graney, Asst. to the Atty. Gen., Timothy T. Cronin, U. S. Atty., E. J. Koelzer, Asst. U. S. Atty., Milwaukee, Wis., for appellant.

Maurice Weinstein, Milwaukee, Wis., for appellee.

Before KERNER, DUFFY and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

These appeals involve an original judgment and an amended judgment, in an action brought by the taxpayer with respect to its alleged liability for excess profits taxes for the calendar years 1943 and 1944. The original judgment was corrected and superseded by the amended judgment. On April 1, 1940, taxpayer, a Wisconsin corporation, entered into a written land contract for the purchase of improved real estate in the city of Milwaukee. The agreed purchase price was $325,000, payable $50,-000 down, $1,458.33 monthly for the period between April, 1943, and March, 1950, and the balance of $152,000 on or before March 31, 1950. In addition taxpayer agreed to pay the vendor amounts sufficient to cover all taxes and assessments against the property, to keep the premises insured in designated amounts, and to maintain the premises in good repair and condition. The agreement provided that in the event of taxpayer's failure to perform any of the obligations under the contract, the vendor at its option had the right either (1) to cancel and terminate the contract, resume possession of the premises, and retain as liquidated damages all amounts theretofore paid by taxpayer, or (2) to accelerate payment of the balance of the purchase price remaining unpaid. Upon full performance by taxpayer the vendor was required to convey title to the property, free and clear of all liens, by warranty deed.

During 1943 the average daily balance due on the purchase price was $259,038.83, and during 1944 it was $241,913.43. In its excess profits tax returns for 1943 and 1944, taxpayer took a credit based upon invested capital, and in computing its invested capital it included as "borrowed invested capital," under Sec. 719, Internal Revenue Code, 50% of the daily average balance of the price due under the purchase contract.

The Commissioner of Internal Revenue determined that the amounts due did not represent borrowed capital within the meaning of Sec. 719(a) (1), and assessed deficiencies accordingly. Taxpayer paid the deficiencies, thereafter filed claims, which were rejected, and then instituted this suit for refunds.

The district court held that the balance of the purchase price payable by taxpayer represented "outstanding indebtedness" evidenced by a mortgage within the meaning of Sec. 719(a) (1), and was therefore includable in taxpayer's borrowed invested

capital for purposes of computing its excess profits credit.

Sec. 719, Internal Revenue Code 26 U.S.C. § 719, 1946 Ed., defines borrowed invested capital as:

"(a) Borrowed capital.

"The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

"(1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, * * *.

\* \* \* \* \* \*

"(b) Borrowed invested capital.

"The borrowed invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be an amount equal to 50 per centum of the borrowed capital for such day."

In defining "borrowed capital" the statute imposes two distinct requirements: that there be an outstanding indebtedness, and that the indebtedness be evidenced by one of the seven designated types of instruments. The government contends that the land contract executed by taxpayer does not meet either requirement.

There is authority for the contention that the term "indebtedness" as used in the Revenue Act implies an unconditional obligation to pay. Gilman v. Commissioner of Internal Revenue, 8 Cir., 53 F.2d 47, 50, 80 A.L.R. 209. The term "outstanding indebtedness" as used in Sec. 719(a) (1) also has been held to mean an unconditional obligation to pay. Frankel and Smith Beauty Departments, Inc., v. Commissioner of Internal Revenue, 2 Cir., 167 F.2d 94, 96. See also: Consolidated Goldacres Co. v. Commissioner of Internal Revenue, 10 Cir., 165 F.2d 542, 543, certiorari denied 334 U.S. 820; Canister Co. v. Commissioner of Internal Revenue, 3 Cir., 164 F.2d 579, certiorari denied 333 U.S. 874, 68 S.Ct. 904, 92 L.Ed. 1150. To demonstrate that taxpayer's liability was not unconditional, the government points to the requirements of the land contract that taxpayer was obligated to pay taxes and insurance and to maintain the property in good repair and condition, and that in the event of a default on taxpayer's part of any of these obligations vendor could cancel the contract, resume possession of the property, and retain as liquidated damages the portion of the purchase price theretofore paid. In such event, under Wisconsin law, the taxpayer would not be required to pay the balance of the stipulated purchase price. Kunz v. Whitney, 167 Wis. 446, 167 N.W. 747. The government urges that this contingency existed throughout the taxable years involved and that the result is that the taxpayer's indebtedness was conditional.

In our opinion it is a close question as to whether or not taxpayer's obligation was conditional. There was nothing taxpayer could do to make certain that its obligation to make the payments specified by the contract would be terminated before the full amount of the purchase price had been paid. It was the vendor who had that option. However, we pass the point, as we prefer to rest our decision on the conclusion that the land contract cannot be considered either a note or a mortgage under Sec. 719(a) (1), Internal Revenue Code. The district court did not agree with taxpayer's contention that the land contract was a note, but it did hold that it was the equivalent of a mortgage, and therefore could be considered a mortgage under the provisions of the statute. In this we think the district court erred.

Taxpayer is claiming a credit or exemption, and is subject to the well established rule that a claimed credit, privilege or exemption from a tax cannot be granted unless specifically authorized by Congress, and that taxpayer must bring himself squarely within the terms of the authorizing statute. Helvering v. Northwest Steel Rolling Mills, Inc., 311 U.S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29; Deputy v. Du-Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348.

The legislative history of Sec. 719 (a) (1) shows a narrowing of the scope of that section, and is persuasive that Con-

gress intended to confine the definition of borrowed capital to the specific instruments designated. Congress deliberately deleted from the draft as originally reported, the phrase, "or any other written evidence of indebtedness," following the listed designated instruments. See: H.Rep.No. 2894, 76 Cong., 3d Sess., pp. 10, 11 (1940–2 Cum. Bull. 496, 514), which accompanied H.R. 10413, the Second Revenue Bill of 1940. As enacted, Sec. 719(a) (1) omitted the quoted phrase.

Words used in a federal taxing statute must have a uniform meaning, and are not necessarily to be construed according to State law unless Congress has so indicated. Estate of Putnam v. Commissioner of Internal Revenue, 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023; United States v. Pelzer, 312 U.S. 399, 61 S.Ct. 659, 85 L.Ed. 913; Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119. Also, since Congress did not define "note" and "mortgage" in Sec. 719, we hold it was intended that these terms be considered according to their ordinary legal acceptation. Crane v. Commissioner of Internal Revenue, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301; Consolidated Goldacres Co. v. Commissioner of Internal Revenue, supra, 165 F.2d at page 545.

In the Consolidated Goldacres case, supra, a conditional sales contract was held not to be a note under Sec. 719(a) (1). That court also rejected the suggestion that it was "in substance" a mortgage. The contract calling for monthly installment payments in Frankel and Smith Beauty Departments, Inc., v. Commissioner of Internal Revenue, supra, likewise was held not to be a note under Sec. 719(a) (1).

We agree that a note does not necessarily have to assume any particular form as long as it embodies, without more, the essential characteristics of a note. But, as the court said in Canister Co. v. Commissioner of Internal Revenue, 3 Cir., 164 F.2d 579, 581: "* * * it is not a valid argument here to say that one has something just as good. * * *"

In the taxable years the contract was still executory on both sides. The vendor still had the obligation to satisfy the outstanding mortgage on the property, to pay the taxes out of the sums received from the taxpayer for that purpose, and to convey a free and clear title.

In the Consolidated Goldacres case, supra, the court pointed out that the contract was bilateral in legal effect, with mutual obligations to be performed by both parties, and therefore did not meet the essential requirements of a note within the meaning of the statute. In the case at bar, the land contract was also bilateral in legal effect with mutual obligations to be performed by both parties; it was not a unilateral promise to pay a fixed sum at a specified time. We hold the land contract was not a note within the meaning of the statute.

The contract by which the vendor retained title to the premises until payment had been made in full was not a mortgage. True, it was intended to provide a measure of security for the performance of an obligation, but a land contract or other conditional sales contract is not synonymous with a mortgage. Consolidated Goldacres Co. v. Commissioner of Internal Revenue, supra, 165 F.2d at page 546. The question whether property sold under a conditional sales contract is included in the term "mortgaged property" under Sec. 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, arose in Re Lake's Laundry, Inc., 2 Cir., 79 F.2d 326. The court held it was not.

In Church v. Smith, 39 Wis. 492, the court recognized that there were some analogies between a land contract and a mortgage. However, it held that a Wisconsin statute referring to mortgages did not include a land contract, saying, page 498: "* * * we do not think this security is within the statute. It is quite manifest that the statute has reference to ordinary mortgages, which leave the fee of the mortgaged premises in the mortgagors * * *."

We hold that the Commissioner was correct in determining the amounts due under the land contract did not represent "borrowed capital" within the meaning of Sec. 719(a) (1), Internal Revenue Code. The judgment of the district court is

Reversed.