**OREGON-WASHINGTON PLYWOOD COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 14084.

United States Court of Appeals, Ninth Circuit.

Feb. 21, 1955.

884

George J. Perkins, Portland, Or., for petitioner.

H. Brian Holland, Asst. Atty. Gen., Robert B. Ross, Ellis N. Slack, Sp. Assts. to Atty. Gen., George Lynch, Atty., Dept. of Justice, Kenneth W. Gemmill, Acting Chief Counsel, Internal Revenue Service, Washington, D. C., for respondent.

Before HEALY and POPE, Circuit Judges, and BOLDT, District Judge.

BOLDT, District Judge.

This is a review of a Tax Court decision which affirmed respondent Commissioner's determination of a $19,925.35 deficiency in the excess profit taxes of petitioner for the calendar year 1944. The determination was based on a holding that payments required of petitioner under a contract with Peterman Manufacturing Co. were not "borrowed invested capital" then defined by Section 719(a) (1) of the Internal Revenue Code, 26 U.S.C.A. § 719(a) (1) as:

"* * * The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, * * * [added by Second Revenue Act of 1940, c. 757, 54 Stat. 974, as amended by Sec. 230(b) (2) of the Revenue Act of 1942, c. 619, 56 Stat. 798]".

All facts were stipulated and only conclusions of law by the Tax Court are presented for review. In brief, the controlling facts are: By written contract

dated August 30, 1943 petitioner purchased a 3,500-acre tract of timberland from Peterman, agreeing to pay therefor $500,000 by cash payments of $100,000 on or before September 30, 1943 and the balance by monthly payments depending in amount upon the quantity of timber cut and removed per month from the tract by or at the instance of petitioner. On the date it bears, the following executed document was delivered by petitioner to Peterman:

"Tacoma, Washington, September 30, 1943.

"$400,000.00

"As provided in an agreement dated August 30, 1943, the undersigned for value received promises to pay to the order of the Peterman Manufacturing Company the sum of Four Hundred Thousand Dollars ($400,000.00) in lawful money of the United States of America. Payments on this note plus accrued interest at the rate of 3% per annum on deferred balances shall be made on the 15th day of each month beginning November 15, 1943.

"The basis of such principal payments to be $5.00 per thousand feet commercial log scale for all logs except wood logs cut and removed by purchaser or its agents during the previous calendar month as provided in the agreement between T. A. Peterman and Ida C. Peterman, owners, and Oregon-Washington Plywood Company, purchaser, dated August 30, 1943, covering certain timber lands in Tillamook County, Oregon.

"Oregon-Washington Plywood Company,
"By /s/ Philip Garland,
"Vice President.
"Attest:
"/s/ Mathilda M. Barrett,
"Secretary."

The contract provided that upon default in the payments or other conditions of the contract Peterman could elect either to declare the contract terminated with forfeiture of all payments and property improvements made prior to default as liquidated damages, or to sue immediately for recovery of the then unpaid balance of the purchase price plus accrued interest. It was expressly provided that no loss, damage or destruction of any part of the property from any cause would terminate the contract or relieve petitioner of its obligations thereunder. By a separate agreement dated September 18, 1943 Peterman contracted to log the timberland for petitioner under a schedule requiring a specified average annual cut until all of the timber be logged, with shipment commencing in October, 1943 and full production as scheduled by February, 1944. On January 4, 1946 the parties executed a written amendment to the first contract providing, inter alia, for the then balance of $241,000 on the purchase price to be paid by minimum monthly payments of $5,000 commencing June 1, 1946. The amendment provided for waiver from its date of the 3% interest provided in the original contract and quoted document, such interest having been paid to the date of the amendment. The balance of the purchase price was paid in full by petitioner as provided in the amendment.

Respondent contends, and petitioner denies, that as the quoted terms are used in Section 719(a) (1): (1) liability for the balance of purchase price was not an "outstanding indebtedness" because it was conditional; (2) the quoted document was not a "note" because it was nonnegotiable and because its reference to the contract made the monthly payments conditional; and (3) the agreement of August 30, 1943 was not a "mortgage."

The Tax Court's first basis for holding petitioner's indebtedness to Peterman conditional is the assertion that the contract was executory and bilateral, rendering the liability for and time of payment contingent. The only cases cited in support of such holding are Consolidated Goldacres Co. v. Commissioner, 10 Cir., 165 F.2d 542; Bernard Realty Co. v. U. S., 7 Cir., 188 F.2d 861; and Journ-

al Publishing Co. v. Commissioner, 3 T.C. 518. None of the cited cases is similar in facts to the present case and the language of the opinions, on the whole, is more favorable to petitioner than to respondent.

In Consolidated Goldacres, a contract providing mutual obligations for extensive mining operations by both parties was the single document claimed by the taxpayer both to create indebtedness and to be a note or mortgage evidencing same.

The 10th Circuit opinion is largely concerned with considering whether the contract was a note or mortgage. In holding that it was neither, only incidental reference is made to "indebtedness." Even if the opinion squarely held liability for payments under the contract was not "indebtedness" under 719(a) (1), there would be little authoritative weight in the decision as applied to the contract in this case under which the only obligation of Peterman was to convey title by stamped deed with abstract or title insurance. When such obligation is contrasted to the mutual covenants for extensive mining operations by both parties continuing throughout the term of the contract in Consolidated Goldacres, it is apparent that there is no similarity in fact or principle between the two. The very fact that Consolidated Goldacres was not decided on the "indebtedness" point inferentially sustains petitioner's contention on such point in the present case.

Bernard Realty Co. [188 F.2d 863] involved an executory real estate contract providing for substantial bilateral obligations on both parties. The 7th Circuit opinion raised and considered whether the unpaid balance of purchase price was an outstanding indebtedness under 719(a) (1), but passed decision of the point with the observation: "In our opinion it is a close question as to whether or not taxpayer's obligation was conditional." The only point decided was that the contract could not be considered either a note or mortgage under 719 (a) (1).

Journal Publishing Co. was concerned only with whether a contract between competitors for discontinuance of certain publications by one of the parties in consideration of payments to be made by the other was a note within 719(a) (1). The language of the Tax Court in that opinion may be significant in considering whether the document quoted herein was a note, but the decision has no authoritative bearing on whether petitioner's obligation for payments to Peterman was an "outstanding indebtedness."

■ The second basis asserted by the Tax Court for holding the indebtedness conditional is that upon petitioner's default in payment or other conditions of the contract, the seller had the option of forfeiting payments and property improvements made prior to default and terminating the contract, or of recovering the unpaid balance of the purchase price and interest. Neither the Tax Court nor respondent suggests any circumstance or condition under which petitioner could have legally resisted the seller's election to recover the full purchase price. The terms of the contract are clear and emphatic to the contrary. No authority has been cited or found to the effect that a seller's option to forfeit or to enforce a contract, in itself, renders the purchaser's liability for payments required by the contract other than an unconditional indebtedness, either generally or in tax law. That construction of such an option, applied in determining "outstanding indebtedness" as used in 719(a) (1), is contrary to the spirit and intent of the tax statute of which the subsection referred to is a part.

■ We are satisfied that under the terms of the contract of August 30, 1943 petitioner's liability for unpaid balances of the purchase price of the timberland, not being subject to any condition or defense petitioner could legally enforce, was unconditional as to petitioner. Except for Peterman's obligation to convey title, the contract was entirely unilateral. Accordingly, the payments required of petitioner were an "outstanding indebtedness," which, if evidenced by note or

mortgage, required allowance to petitioner of the tax credit authorized by law.

The Tax Court held the document dated September 30, 1943 was not a note because of the mention therein of the August 30, 1943 contract and because the amount of monthly payments was to be computed partially by reference to the contract. Respondent's brief in this court makes the further contention that only negotiable notes qualify as evidence of indebtedness under 719(a) (1). The record does not show that contention was raised in the Tax Court and the point is not mentioned in the Tax Court opinion.

The Tax Court has pointed out:

" \* \* \* The provisions of section 719 are unambiguous. The Commissioner of Internal Revenue has no power therefore to amend it by regulations. Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268. Nor may this Court add to the definition set forth in the statute.

\* \* \* \* \* \*

" \* \* \* The statute itself contains no definition of 'note.' Section 30.719-1 of Regulations 109, qualifies the term 'note' used in the statute as 'a promissory note.' Black's Law Dictionary (1933 Ed.), contains a number of definitions of a promissory note. One such definition is: 'A written promise to pay a certain sum of money, at a future time unconditionally.' " Journal Publishing Co. v. Commissioner, supra.

After referring to the foregoing language, the 10th Circuit in Consolidated Goldacres pointed out that the Tax Court recognized that "a note need not be in any particular form." The same idea was expressed again by the Tax Court in Flint Nortown Theatre Co. v. Commissioner, 4 T.C. 536.

" \* \* \* since Congress did not define 'note' and 'mortgage' in Sec. 719, we hold it was intended that these terms be considered according to their ordinary legal acceptation.

\* \* \* \* \* \*

"We agree that a note does not necessarily have to assume any particular form as long as it embodies, without more, the essential characteristics of a note." Bernard Realty Co. v. U. S., supra [188 F.2d 864].

"As we have seen, the Congress has deliberately chosen words to define the type of 'outstanding indebtedness' which will be included in the excess profits credit, and those words should be given their ordinary meaning in common usage." Consolidated Goldacres v. Commissioner, supra [165 F.2d 545].

■■ Mere mention of a contract in a note, in itself, will not destroy the legal status of the note, whatever effect it may have on negotiability. The quoted document in the present case has all of the essential language and characteristics of a "note" as that term is commonly understood in legal usage and as defined by the Tax Court itself. The fact that full payment might be accomplished earlier or later, according to the quantity of timber cut, would not destroy note status. Promissory notes, negotiable or otherwise, commonly and frequently permit a variable time for full payment by providing for accelerated payment at the option of the maker. If either the note or the contract in question had expressed or contemplated a condition under which payment would not be required or could not be enforced, petitioner's written promise to pay would have been conditional. No provision of either document, nor any implication arising from any provision, was to such effect.

■ The most that can be said for respondent's contentions is that, if neither the separate contract of September 18, 1943 nor any other provision for logging had existed at the time the note was made, the time for and amount of monthly payments was not expressly fixed by the parties. Even on such assumption contrary to the undisputed fact, neither the indebtedness nor the note would have been vitiated. The provisions of the Au-

gust 30, 1943 contract and the note, as a whole, clearly express the intention and agreement of the parties that reasonably prompt and substantial logging be accomplished and that payments based on the monthly amount of logging be commenced within a reasonable time. Both the provision for interest on the whole of unpaid balances on the purchase price and the provision for petitioner's liability for the whole purchase price even after destruction of the entire stand of timber are inconsistent with any other view.

" * * * if, by reason of the peculiarity of the transaction, the parties from necessity must be held to have so contracted, the law usually implies that the performance is to take place within a reasonable time, where the contract is not terminable at will or void for uncertainty". 17 C.J.S., Contracts, § 503(a).

Respondent contends and the Tax Court held that the August 30, 1943 contract must be read into the note, at least to the extent of determining monthly payments. By the same token, the September 18, 1943 contract between the same parties must be read into or with the prior contract and the subsequent note. That contract required logging to commence on the timberland in October, 1943 with a specified minimum by February, 1944 and continuing until the entire tract was logged. The timber was cruised at far greater footage than required to provide payment of the purchase price in full under the payment terms of the contract.

Apparently respondent has never provided by regulation that to qualify under 719(a) (1) a note must be negotiable. American Nat. Bank v. Marshall, 122 Kan. 793, 253 P. 214, and Road Improvement Dist. v. Southern Trust Co., 152 Ark. 422, 239 S.W. 8, cited by respondent, are not tax cases and under their facts lend little, if any, support to the contention. Congress did not express or intimate any intended limitation on the word "note." The classification of promissory notes based on negotiability

is in common use and widely understood. If only negotiable or any other limited class of promissory notes was intended as evidence of indebtedness under 719 (a) (1), Congress could easily and simply have so provided. The Tax Court made that observation in Journal Publishing Co., supra, concerning a situation identical in principle. Accomplishment of the purpose and intent of Congress in providing the tax credit does not require that the notes referred to in Section 719(a) (1) be negotiable. Reading the proposed limitation into the statute would not be justified even if we had authority to do it.

The conclusions thus reached make it unnecessary to determine whether the note in this particular case was negotiable, or whether the August 30, 1943 contract in legal effect was a mortgage.

The judgment of the Tax Court is reversed and the relief sought by petitioner directed.